STATE OF HAWAII, Plaintiff-Appellant, *v.* PERSHING S. LO, Defendant-Appellee

NO. 8741

(CRIMINAL NO. 55875)

DECEMBER 6, 1983

NAKAMURA, ACTING C.J., PADGETT, AND WAKATSUKI, JJ., CIRCUIT JUDGE MOON IN PLACE OF LUM, C.J., RECUSED, AND CIRCUIT JUDGE SPENCER IN PLACE OF HAYASHI, J., RECUSED

OPINION OF THE COURT BY NAKAMURA, J.

The State of Hawaii (the State) gathered evidence incriminating Dr. Pershing S. Lo (the defendant) by installing electronic viewing, amplifying, and recording devices in a hotel room to which he had been lured by a patient feigning, under the direction of law enforcement officers with whom she was cooperating, an urgent need for his medical attention. The Circuit Court of the First Circuit suppressed the evidence to remedy what it concluded was a constitutional violation, and the State appeals. It asserts there was no invasion of defendant's constitutional or statutory right to privacy because the patient consented to the surveillance. We affirm the trial court's suppression order, but on statutory rather than constitutional grounds.

I.

The defendant was indicted for Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (HRS) § 712-1242(1)(c). The investigation leading to the indictment was triggered by a report made by a pharmacist to a State narcotics control officer on March 5, 1981 of the receipt of what appeared to be a forged drug prescription written on a form bearing the defendant's name. When the defendant was informed of this report, he told the officer that blank prescription forms had been stolen earlier from his office by two of his patients, Lawrence Padilla and Charisse Sundberg. Several days later the pharmacist was shown photographs of several persons who the officer thought might have passed the prescription. She selected the likeness of Charisse Sundberg as that of the person who had done so.

On the morning of March 12, 1981, approximately a week after the State narcotics control agency had been alerted to the possible offense, several agents assigned to the Investigation

and Narcotics Control Section (INCS) proceeded to the residence of Lawrence Padilla and Charisse Sundberg to question them. The suspects acknowledged receiving barbiturates and prescriptions for other controlled substances from the defendant; they also implicated him in criminal activity related to the use of drugs. The officers then prevailed upon them to cooperate with the agency in obtaining evidence of the defendant's criminal activity.

Miss Sundberg went to the office of the INCS later that day as instructed and was advised of a covert plan to develop evidence incriminating the defendant. Following directions given her by INCS agents, she telephoned the defendant at his office and asked him to come to a Waikiki hotel, claiming to be in desperate need of counselling and medication. The defendant agreed to see her at 5:30 p.m., approximately two hours later.

The agents thereupon set about the tasks of securing two adjoining rooms at the hotel and equipment required to monitor and electronically record the event they had arranged. They encountered some difficulty in obtaining the equipment and personnel necessary for the planned surveillance. They sought aid from other agencies, but were not in a position to further implement the plan at the prearranged hour. Miss Sundberg was therefore instructed to delay the meeting.

The defendant arrived at the hotel at 7:00 p.m. and proceeded to the room then occupied by Miss Sundberg. Unbeknownst to the defendant, of course, audio and video apparatus to effectuate a surveillance of activities therein had been installed, and what transpired thereafter was monitored by INCS agents occupying the adjoining room.[1] At a crucial moment when the defendant handed Miss Sundberg a vial containing drug capsules, an officer posing as her "business manager" entered and grabbed it from her. The defendant

---

[1] No warrant authorizing the monitoring and recording of the activities was sought by the agents since they believed Miss Sundberg's cooperation rendered it unnecessary for them to do so. They viewed the situation as one of consensual "bugging" where no warrant was required.

made several attempts to recover it from the "business manager," but did not succeed. And he eventually departed an hour or so after he arrived, without the drugs.

The electronically recorded evidence of defendant's criminal activity, as well as other evidence acquired by the government agents in the course of their investigation, was subsequently presented to the Grand Jury in and for the Circuit Court of the First Circuit, and the jury returned the indictment sought by the Prosecuting Attorney. Upon reviewing the transcript of grand jury proceedings and other information supplied by the prosecution, defendant's counsel sought to exclude from trial "any and all video and audio tapes, transcripts, and/or reports derived therefrom" and "any and all evidence, physical or electronic, derived from the electronic eavesdropping, surveillance and monitoring conducted during the investigation." He further moved to suppress any testimony based on information obtained from the foregoing conduct; and he moved for the return of the drug capsules and for the dismissal of the indictment.

The trial court after conducting a full hearing excluded "the audio and video recordings and the testimony of the agents who monitored such recordings" as evidence. The defendant's pleas for the return of the drug capsules and for the dismissal of the indictment, however, were denied. While it discussed the constitutional and statutory objections raised by the defendant and found merit in both, the court expressly granted the suppression order as "the clear remedy for the violation of section 7, article I" of the State Constitution.[2]

---

[2] Article I, § 7 of the Constitution of the State of Hawaii reads:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

## II.

Though the circuit court ruled that the electronic surveillance of the activities in the hotel room breached the defendant's constitutional right to privacy, we are by no means obliged "to pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of." *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 347 (1936) (Brandeis, J., concurring). "Thus, if a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, . . . [this court] will decide only the latter." *Id.* The question at the threshold whenever constitutional questions are pressed upon us for decision, therefore, is whether there may be another ground upon which the case can be decided. *See State v. Bumanglag,* 63 Haw. 596, 615, 634 P.2d 80, 93 (1981); *Smith v. Smith,* 56 Haw. 295, 305, 535 P.2d 1109, 1116 (1975); *cf. State v. W. Tin Yan,* 44 Haw. 370, 383, 355 P.2d 25, 32 (1960) ("Courts generally will not pass upon the constitutionality of a law unless necessary to the determination upon the merits of the cause under consideration."); *Territory v. Gaudia,* 41 Haw. 213, 214-15 (1955) ("Courts will not pass upon the validity of a statute in any case unless it is necessary to a decision of the case so to do.") We think there is such ground here; like the circuit court, we find merit in the defendant's claim that the electronic eavesdropping carried on by the State in this case was prohibited by statute.

### A.

Electronic eavesdropping by the State and its agents is regulated by Hawaii's Wiretap Law, HRS §§ 803-41 to 803-50. The law generally proscribes the electronic surveillance of wire communications but permits law enforcement officers to intercept such communications in the investigation of criminal offenses when the interception is pursuant to a valid court order or otherwise authorized by law.[3] For the most part our

---

[3] HRS § 803-42(b)(4) provides:

law follows the federal statute governing the use of wiretaps by law enforcement officers. It reiterates many of the provisions of Title III of the Omnibus Criminal Control and Safe Streets Act of 1968.[4] *See* A. Bowman, *Hawaii's New Wiretap Law,* 14 Haw. Bar J., No. 3, at 84 (1978).

Yet it departs from the federal paradigm in a presently significant aspect. The relevant provision of the Hawaii law, like the prototype,[5] allows the interception of a wire or oral communication where the interceptor is a party to the communication or where one of the parties has given prior consent to the interception. But HRS § 803-42(b)(3) goes further and forbids the surreptitious installation in a "private place" of any device to record, amplify, or broadcast sounds emanating from or events occurring in the "private place"; the subsection reads:

It shall not be unlawful under this part for a person to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act; *provided that installation in any private place, without consent of the person or persons entitled to*

---

It shall not be unlawful under this part for any person to intercept a wire or oral communication or to disclose or use the contents of an intercepted communication, when such interception is pursuant to a valid court order under this chapter or as otherwise authorized by law; provided that a communications carrier with knowledge of an interception of communications accomplished through the use of the communications carrier's facilities shall report the fact and duration of the interception to the administrative director of the courts of this State.

[4] 18 U.S.C. §§ 2510 to 2520 (1976).

[5] 18 U.S.C. § 2511(2)(d) reads:

It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

*privacy therein, of any device for recording, amplifying, or broadcasting sounds or events in that place, or use of any such unauthorized installation, or installation or use outside a private place of such device to intercept sounds originating in that place which would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein is prohibited.* (Emphasis supplied).

The proviso above plainly outlaws the "bugging" of "any private place," unless the parties entitled to privacy therein consent. *See* A. Bowman, *supra,* at 85.

### B.

The State concedes "that if the literal language of section 803-42 controls, the eavesdropping recordings by the agents fall outside the statute since 'wire' was not used in the eavesdropping." However, it argues a literal application would do violence to or be in conflict with a legislative intent to permit the interception of both wire and oral communications where one of the parties consents.

Although "we have rejected an approach to statutory construction which limits us to the words of a statute, no matter how clear they may appear upon perfunctory review," *Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 420, 643 P.2d 48, 52 (1982), it is still fundamental "that the starting point for interpreting a statute is the language of the statute itself." *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980). And "[a]bsent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Id.; see also In re Tax Appeal of Queen's Medical Center,* 66 Haw. 318, 324, 661 P.2d 1201, 1205 (1983); *Travelers Insurance Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 383-84, 641 P.2d 1333, 1336-37 (1982). Yet, it has not been our practice "to seek refuge in 'strict construction,' 'plain meaning,' or 'the popular sense of the words,'" where there is "material evidencing legislative purpose and intent." *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 284, 639 P.2d 1088, 1094 (1982). We thus examine

the material at hand to see whether it substantiates the State's claim that the legislature meant to allow consensual "bugging" as well as consensual wiretapping.

The Judiciary Committee of the State House of Representatives reporting on House Bill No. 2434-78, which was subsequently enacted as Hawaii's Wiretap Law and codified as HRS §§ 803-41 to 803-50, acknowledged that the measure followed the related federal statute. Hse. Stand. Comm. Rep. No. 605-78, in 1978 House Journal, at 1661.[6] But the committee emphasized that "the bill incorporate[d] added safeguards against unwarranted invasions of privacy" and that there were "significant differences between the bill and the federal and most other state wire-tapping statutes." *Id.* Among the differences specifically noted was "the complete prohibition of court-ordered bugging." *Id.*

The Judiciary Committee of the State Senate, to which the measure was also referred for consideration, submitted a report reflecting similar views. *See* Sen. Stand. Comm. Rep. No. 983, in 1978 Senate Journal, at 1172.[7] Like its House

---

[6] The paragraph of the report containing this observation reads as follows:

The bill is similar to the portion of the Federal Omnibus Crime Control and Safe Streets Act of 1968, as amended, relating to wire interception. However, the bill incorporates added safeguards against unwarranted invasions of privacy. The most significant differences between the bill and the federal and most other state wire-tapping statutes are the complete prohibition of court-ordered bugging, the use of an appointed attorney to oppose the wiretap application, the limitation of wiretap orders to very serious crimes or to other specific serious offenses when the involvement of organized crime is shown, the rigorous notice, disclosure, and destruction provisions.

Hse. Stand. Comm. Rep. No. 605-78, *supra,* at 1661.

[7] The Senate report reads in pertinent part:

This bill resembles the federal eavesdropping legislation found in 18 U.S. Code Sections 2510-2520. However, this bill incorporates added safeguards against unwarranted invasions of privacy, the most important of which is the prohibition of bugging, that is, the use of microphones to intercept conversations. This bill authorizes only the wiretapping of telephone conversations pursuant to a court order based on probable cause. In addition, this bill goes beyond the federal statutes in providing for an appointed attorney to oppose the wiretap application, and in limiting wiretap orders to several very serious crimes and to other crimes only when the involvement of organized crime is shown in the application.

Sen. Stand. Comm. Rep. No. 983, supra, at 1172.

counterpart, the Senate committee pointedly affirmed "the prohibition of bugging" in the proposed legislation. *Id.*

Given the plain language of HRS § 803-42(b)(3) and the expressions of legislative sentiment confirming the proscription of "bugging" in an even clearer idiom, we would have to conclude there is no foundation for the State's contention that the statutory scheme condones consensual "bugging."

## C.

We also see no reason to adopt the State's thesis that *State v. Lester,* 64 Haw. 659, 668, 649 P.2d 346, 353 (1982), is dispositive of the question posed by this appeal, though we realize the holding there was that "participant monitoring" of a conversation between the defendant and a government informer did not contravene Hawaii's Wiretap Law. The meeting between the defendant and the government informer in *Lester* took place in a public park, and the dialogue was recorded by a "bug" the informer carried on her person. There was no installation of an electronic device in "any private place," and *Lester* is not controlling precedent here.

Nor do we find substance in the State's suggestion that the surveillance of the hotel room occupied by Charisse Sundberg was not subject to judicial reproof since it was unreasonable for the defendant to expect the content of their conversation would not be revealed by her. HRS § 803-42(b)(3) condemns the surreptitious installation of electronic viewing, listening, and recording devices; it protects "any private place" and the privacy of anyone rightfully there. What we are expounding, therefore, is a statutory right associated with places; we are not dealing with notions of privacy unrelated thereto, which have been incorporated in Fourth Amendment jurisprudence since *Katz v. United States,* 389 U.S. 347, 351-52 (1967). And we experience no qualms in holding a hotel room ostensibly serving as someone's temporary abode is a "private place" and a physician called there by the occupant is "entitled to privacy therein" by virtue of his rightful presence. *Cf. Lanza v. New York,* 370 U.S. 139, 143 (1962) ("A hotel room, in the eyes of the Fourth Amendment, may become a person's 'house.'"); *Jones v. United States,* 362 U.S. 257, 267 (1960) (A person

permitted to use an apartment may "invoke the privacy of the premises" to challenge the legality of a search thereof).

### III.

Having decided that the defendant's statutory right to privacy was breached by the emplacement of electronic eyes and ears, we do not reach the constitutional question raised by the State. But this renders it necessary for us to consider whether the remedy afforded the defendant was nonetheless proper, inasmuch as the trial court fashioned its remedial order in terms of a constitutional rather than a statutory violation.

To be sure, the Wiretap Law speaks of a remedy—HRS § 803-46(i)(1) permits an "aggrieved person" to seek the suppression of "any intercepted wire communication, or evidence derived therefrom" on grounds that it was "unlawfully intercepted."[8] But what may be excluded from trial pursuant to the subsection appears to be limited to unlawfully intercepted *wire* communications and evidence derived therefrom. There is no provision explicitly permitting an aggrieved person to move for the suppression of evidence obtained through the installation of microphones and video cameras.

Yet it would be the height of illogic for us to assume the legislature intended that one aggrieved by "bugging," a practice it flatly prohibited, should be without a practical remedy. In our opinion the omission was inadvertent, and it is implicit in the Wiretap Law that evidence obtained in violation of its

---

[8] HRS § 803-46(i)(1) in relevant part reads:

Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of this State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire communication, or evidence derived therefrom, on the grounds that:

(A) The communication was unlawfully intercepted;

(B) The order of authorization or approval under which it was intercepted is insufficient on its face; or

(C) The interception was not made in conformity with the order of authorization or approval.

provisions should not be used against a person aggrieved by the illegal conduct.

The order suppressing evidence is affirmed, and the case is remanded for proceedings not inconsistent with this opinion.

*Arthur E. Ross* (*Peter C. Hsieh* on reply brief), Deputies Prosecuting Attorney, for appellant.

*Wilfred H. C. Youth* (*Thomas J. Wong* with him on the brief; *Ikazaki, Devens, Lo, Youth & Nakano,* of counsel) for appellee.

