STATE OF HAWAII, Respondent-Appellant, *v.* ROY OKUBO and GEORGE YAMAMOTO, Petitioners-Appellees

NO. 8286

(CRIMINAL NO. 55122)

MAY 29, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

OPINION OF THE COURT BY LUM, C.J.

We granted writ of certiorari to review the appeal of Roy Okubo and George Yamamoto from the decision of the Intermediate Court of Appeals (ICA) reversing the circuit court's suppression of taped conversations which were to be used as evidence against them on charges of bribing two police officers. We affirm the ICA's decision.

Okubo and Yamamoto were indicted in January of 1981 for bribing two policemen in violation of Hawaii Revised Statutes (HRS) § 710-1040(1)(a). Evidence against them was obtained through the warrantless taping and transmission of approximately forty face-to-face and telephone conversations Okubo and Yamamoto had with the officers over a seven month period. The police used four methods to obtain evidence:

(1) A participant-police officer wore a "Nagra" brand *body tape recorder* which recorded face-to-face conversations;

(2) A participant-police officer permitted telephone conversations to be recorded with an *audio recorder attached to the phone* which the officer was using;

(3) A participant-police officer wore a *transmitter,* which simultaneously broadcasted face-to-face conversations to other police officers who monitored and recorded the conversations, sometimes in conjunction with videotape recordings and sometimes not; and

(4) The monitoring police officers *video-tape recorded* the face-to-face conversations among Officers Nagao and Higa and the defendants. *See* 3 Haw. App. at 398; 651 P.2d at 497-98 (1982).

The two participant police officers consented to the recordings and videotapes. Okubo and Yamamoto did not know of, or consent to, any of the tapings, although they testified that they did know that they were speaking with police officers. A meeting and conversation that occurred at a public restaurant, the Beretania Saimin, on January 9, 1980 was taped, transmitted and videotaped. Okubo and Yamamoto moved to suppress all of the tapes under Rule 12(b), Hawaii Rules of Penal Procedure (1977), and on September 4, 1981 the circuit court partially granted the motion, suppressing the taped conversations but allowing in the soundless

videotapes. The lower court found that the warrantless taping of the conversations violated Article I, § 7 of the Hawaii Constitution,[1] and HRS § 803-42(b)(3).[2]

On appeal by the State, the case was assigned to the ICA. The ICA reversed the circuit court's suppression under *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982) and held that since the tapes were made with the consent of one of the parties to the conversation, a warrant was not required. 3 Haw. App. 396, 409, 651 P.2d 494, 504 (1982). The ICA also held that HRS § 803-42(b)(3) expressly allows the interception of a wire or oral communication if one party to the conversation consents to the interception. Okubo and Yamamoto argue once again in this appeal that they have a protected privacy interest under Article I, § 7, and that the circuit court's suppression was proper.

In *Lester, supra,* two members of the court found no violation of either Article I, § 7 or HRS § 803-42(b)(3). 64 Haw. at 668, 649 P.2d at 353. One justice concurred because the conversation between Lester and the government agent occurred in a public park. The concurrence expressed reservations over the propriety of such a recording if it had occurred in a private place, or if the conversa-

---

[1] Article 1, § 7 provides:

Section 7. The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted.

[2] HRS § 803-42(b)(3) provides:

It shall not be unlawful under this part for a person to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this State or for the purpose of committing any other injurious act; provided that installation in any private place, without consent of the person or persons entitled to privacy therein, of any device for recording, amplifying, or broadcasting sounds or events in that place, or use of any such unauthorized installation, or installation or use outside a private place of such device to intercept sounds originating in that place which would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein is prohibited.

tion had been simultaneously recorded and transmitted to other hidden agents. 64 Haw. at 674-75, 649 P.2d at 356-57. The two dissenting justices found a violation of Section 7 of the Hawaii Constitution. 64 Haw. at 676; 649 P.2d at 357-58.

Because of the change in the composition of this court, we granted certiorari only to review the important issues. We affirm the reasoning in the plurality opinion of *Lester, supra,* and the ICA's decision in *Okubo, supra,* and find the consensual monitoring of the conversation valid under Article I, § 7 of the Hawaii Constitution and HRS § 803-42(b)(3). Affirmed.

*Gary T. Hayashi (James E.T. Koshiba,* with him for the writ and on the brief, *Koshiba & Young)* for petitioners-appellees.

*Thomas Pico (Edward H. Kubo, Jr.,* on the brief), Deputy Prosecuting Attorneys, for respondent-appellant.


DISSENTING OPINION OF NAKAMURA, J.,
WITH WHOM WAKATSUKI, J., JOINS

Mindful that "[t]he tremendous growth of electronic communications technology along with a corresponding growth of electronic surveillance techniques make possible the ready encroachment upon a person's private conduct and communication," the Constitutional Convention of Hawaii of 1968 proposed an expansion of the protections afforded by the search and seizure provisions of the State Constitution. Stand. Comm. Rep. No. 55, in Proceedings of the Constitutional Convention of Hawaii of 1968, Vol. I, at 233. Thus, Article I, § 7 of the Constitution now provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures *and invasions of privacy* shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized *or the communications sought to be intercepted.*

(Emphasis supplied). What the convention proposed and the people of Hawaii accepted is set to naught by the majority of the court in summary fashion; but "I cannot believe that the framers in 1968 amended section 7 to accomplish nothing," *State v. Okubo,* 3

Haw. App. 396, 414, 651 P.2d 494, 507 (1982) (Tanaka, J., concurring).

I.

The issue here is not whether Article I, § 7 outlaws electronic eavesdropping — there unquestionably is room for electronic technology in criminal law enforcement. "The critical question . . . is whether . . . we should impose on our citizens the risks of the electronic listener or observer without at least the protection of a warrant requirement." *United States v. White*, 401 U.S. 745, 786 (1971) (Harlan, J., dissenting). The majority of this court relies on the reasoning of the plurality in *State v. Lester*, 64 Haw. 659, 649 P.2d 346 (1982), in concluding Article I, § 7 does not afford such protection where the surveillance is conducted with the consent or cooperation of a participant in the conversation. The plurality there like the Intermediate Court of Appeals in this case reasoned such surveillance is of no constitutional consequence since society has displayed no inclination to treat as reasonable the subjective expectation of a person engaged in a private conversation that it will not be repeated. *Id.* at 668, 649 P.2d at 353; *State v. Okubo*, 3 Haw. App. at 409, 651 P.2d at 504.

Still, "it is one thing to subject the average citizen to the risk that participants in a conversation with him will subsequently divulge its contents to another, but quite a different matter to foist upon him the risk that unknown third parties may be simultaneously listening in" or recording the conversation. *United States v. White*, 401 U.S. at 777 (Harlan, J., dissenting). "The latter risk is not yet rooted in [our] common . . . experience," *Holmes v. Burr*, 486 F.2d 55, 72 (9th Cir.) (Hufstedler, J., dissenting), *cert. denied*, 414 U.S. 1116 (1973), and the framers of the crucial language of Article I, § 7 intended it should not be thrust upon us without limitation. By imposing the requirement of a warrant "describing the communications sought to be intercepted," they limited the risk of one's conversation being monitored to situations where his conduct provides a judge with cause to suspect his probable involvement in crime.[1] The majority,

---

[1] This is confirmed by the history of the 1968 addition to the search and seizure provisions of the Hawaii Constitution as outlined in the dissenting opinion in *State v. Lester, supra.*

however, embraces "a rule of law that permits official monitoring of private discourse limited only by the need to locate a willing assistant." *United States v. White,* 401 U.S. at 789 (Harlan, J., dissenting).

## II.

The warrant requirement, despite protestations to the contrary, is not designed "to protect those who would engage in illegal activity." *People v. Beavers,* 393 Mich. 554, 566, 227 N.W.2d 511, 515, *cert. denied,* 423 U.S. 878 (1975). The interposition of the requirement would not have shielded the criminal activities of the defendants here or in *State v. Lester, supra.* The "bugged" meetings were arranged beforehand by the police, as electronically aided forays for evidence are likely to be.[2]

I find the decision that "consensual monitoring" is not subject to constitutional regulation unacceptable because it does not "give effect to the intention of the framers and the people [who] adopt[ed]" the crucial language of Article I, § 7. *HGEA v. County of Maui,* 59 Haw. 65, 80-81, 576 P.2d 1029, 1039 (1978). The ruling "does not simply mandate that criminals must daily run the risk of unknown eavesdroppers prying into their private affairs; it subjects each and every law-abiding member of society to that risk." *United States v. White,* 401 U.S. at 789 (Harlan, J., dissenting). But knowledge that government must justify its need to engage in electronic eavesdropping would definitely "secure a measure of privacy and a sense of personal security throughout our society" as intended by the framers. *Id.* at 790 (Harlan, J., dissenting).

---

[2] In State v. Lo, 66 Haw. 653, 655, 675 P.2d 754, 756 (1983), law enforcement officers also "monitor[ed] and electronically record[ed] the event they had arranged."