STATE OF HAWAII, Plaintiff-Appellant *v.* MICHAEL KEITH LEE, Defendant-Appellee

NO. 8943

(CRIMINAL NO. 54349)

AUGUST 24, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

308

OPINION OF THE COURT BY LUM, C.J.

The State appeals from an order of the circuit court suppressing incriminating evidence which was used to charge Dr. Michael Keith Lee with promoting drugs in violation of Hawaii Revised Statutes (HRS) §§ 712-1242(1)(c) and 712-1245(1)(c). At the hearing below, the parties agreed that a law enforcement officer posing as a patient, while wearing a recording device, made three visits to Dr. Lee's private office, and recorded their conversations without first obtaining a warrant. The lower court ruled that the audio recordings violated Article I, § 7 of the Hawaii State Constitution. It therefore granted the suppression of all tapes, transcripts and reports made from the audio recordings.

We consider two issues in this appeal: (1) whether the recordings made in defendant's office violated Article I, § 7 of the Hawaii Constitution, and (2) whether the recordings violated HRS § 803-42(b)(3) of the Hawaii Wiretap Act. On both issues we answer no. Hence, we reverse.

## I.

We turn first to the question of whether the audio recordings violated Article I, § 7 of the Hawaii Constitution, which provides:

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communication sought to be intercepted.

Article I, § 7 has been recently interpreted in *State v. Okubo,* 3 Haw. App. 396, 651 P.2d 494 (1982), *aff'd,* 67 Haw. 197, 682 P.2d 79 (1984) and *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982). *Okubo* involved the consensual recording, monitoring, transmitting and videotaping of a conversation which took place in a public restaurant. The defendants knew they were conversing with police officers, although only the officers consented to the recording and monitoring. 67 Haw. at 198, 682 P.2d at 80. The conversation in *Lester* was recorded in a public park by a government agent who consented to the recording. Lester did not consent to the recording, and was not aware he was being recorded. 64 Haw. at 663, 649 P.2d at 350. In both cases, the warrantless consensual recordings were proper under the U.S. and Hawaii constitutions, because the defendants did not have reasonable expectations of privacy in the recorded conversations.

The rationale of the federal line of cases which we followed in *Lester,* is that there is no reasonable expectation of privacy in consensual recording; the agent may testify to what was said in the conversation, and the tape merely preserves the credibility of his testimony. For example, in *Lopez v. United States,* 373 U.S. 427 (1963), a government agent recorded a conversation of which he was a participant. There was no installation of a recording device in the defendant's premises. The U.S. Supreme Court found that the recording did not violate the constitution, as it was the most reliable evidence of a conversation to which the agent could testify in court. *Id.* at 439. *See Lester,* 64 Haw. at 664-65, 649 P.2d at 350-52.

In *Lester* and *Okubo,* this court found that the words "invasions of privacy" in Article I, § 7 of the Hawaii Constitution, did not afford

defendants greater protection than that guaranteed in the Fourth Amendment to the U.S. Constitution. *Lester,* 64 Haw. at 665, 649 P.2d at 352; *Okubo,* 67 Haw. at 200, 682 P.2d at 81. As we said in *State v. Roy,* 54 Haw. 513, 516, 510 P.2d 1066, 1068 (1973), "government activities in listening to a person's words constitute an unreasonable search and seizure only if those activities violate that person's justifiable expectations of privacy." In *Roy,* we held that there was no violation of Article I, § 5[1] of the Hawaii Constitution where an undercover police agent without a warrant participated in a marijuana transaction in the defendant's home.

In the instant case, although Dr. Lee contends he has a reasonable expectation of privacy because the recorded conversations occurred in his office, we see no greater protection merely because it occurred in his office, even if his office could be considered a private place. The officer consented to the recordings, and was a participant in the conversations. Since the officer was free to testify in court to what was said between him and Dr. Lee, the recordings are merely reliable corroboration of the conversations. Therefore, although the conversations occurred in his office, Dr. Lee cannot have the recordings of them excluded. *See Lester, supra,* 64 Haw. at 664-668, 649 P.2d at 350-353.

## II.

Lee next contends that all warrantless recordings, even consensual, are prohibited under Hawaii's Wiretap Law, HRS § 803-42(b)(3), and *State v. Lo,* 66 Haw. 653, 675 P.2d 754 (1983).

HRS § 803-42(b)(3) provides:

It shall not be unlawful under this part for a person to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of this state or for the purpose of committing any other injurious act; provided that

---

[1] Article I, § 5 was renumbered in 1978 as Article I, § 7.

*installation in any private place,* without consent of the person or persons entitled to privacy therein, of any device for recording, amplifying, or broadcasting sounds or events in that place, or use of any such unauthorized installation, *or installation or use outside a private place* of such device to intercept sounds originating in that place which would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein is prohibited. (Emphasis added.)

We read § 803-42(b)(3) to mean that the use of a recording device to monitor a conversation is allowed, except that (1) "installation in any private place, without consent of the person or persons entitled to privacy therein" is prohibited, and (2) "installation or use outside a private place" without such consent is prohibited. In situation (1), if the statute prohibited "installation or use", the recordings in this case would be unlawful. However, absent such language, there is an ambiguity in the statute's meaning that requires us to ascertain the legislative intent. The language of HRS § 803-42(b)(3) was taken from HRS § 711-1111(1)(b) and (c) (1976),[2] regarding violation of privacy. *See* Hawaii Commission on Crime's report to the Hawaii State Legislature, "Wiretapping" (1978) at 103 and 124.

A question arises as to the meaning of the terms "installation" and "use", since the statutory language and the Commentary of § 711-1111(1)(b) and (c) uses the terms ambiguously.[3] However, we do not believe this provides a sufficient indication of legislative

---

[2] HRS § 711-1111(1)(b) and (c) provides:

(b) *Installs in any private place,* without consent of the person or persons entitled to privacy therein, any device for observing, photographing, recording, amplifying, or broadcasting sounds or events in that place, or uses any such unauthorized installation; or

(c) Installs or uses outside a private place any device for hearing, recording, amplifying, or broadcasting sounds originating in that place which would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy therein; (Emphasis added.)

[3] The Commentary to § 711-1111 provides in pertinent part:

[S]*ubsection (1)(b) forbids installation or use* of eavesdropping equipment in a "private place" (defined in § 711-1100) *whereas subsection (1)(c) forbids the use anywhere* of equipment designed to receive sounds originating in a private place and normally inaudible or incomprehensible outside. Physical contact with the private place is not necessary. (Emphasis added.)

intent to read the two words interchangeably in interpreting § 803-42(b)(3), especially since the language itself of § 803-42(b)(3) is clear. Although the Commentaries to statutory sections may be used as aids in understanding code provisions, they are not intended to be evidence of legislative intent. *State v. Anderson,* 58 Haw. 479, 483, n. 5, 572 P.2d 159 (1977). *See also* HRS § 701-105. And, even if we were to give more weight to the Commentary of § 711-1111, the Comment to § 803-42(b)(3) does not adopt the language of the § 711-1111 Commentary. Therefore, we resolve the ambiguity by determining that the legislature did not intend to prohibit the installation or use in a private place.

In further support of our interpretation of §§ 803-42(b)(3) and 711-1111 is the ALI Model Penal Code, § 250.12(1).[4] The Model Penal Code's § 250.12(1), "Violation of Privacy," which is identical to HRS § 711-1111(1), is explained in a lengthy Comment, which assists us in resolving the ambiguity presented by the language of HRS §§ 711-1111 and 803-42(b)(3). The Comment to § 250-12 explains the rationale behind the violation of privacy provisions of the model wiretap statute, which we find persuasive in interpreting HRS § 803-42(b)(3).

Section 250.12(1)(b) is intended to protect against both the unauthorized installation in a private place of "any device for observing, photographing, recording, amplifying or broadcasting sounds or events in such place" and the use of any unauthorized installa-

---

[4] Section 250.12(1) of the ALI's Model Penal Code provides:

(1) *Unlawful Eavesdropping or Surveillance.* A person commits a misdemeanor if, except as authorized by law, he:

(a) trespasses on property with purpose to subject anyone to eavesdropping or other surveillance in a private place; or

(b) installs in any private place, without consent of the person or persons entitled to privacy there, any device for observing, photographing, recording, amplifying or broadcasting sounds or events in such place, or uses any such unauthorized installation; or

(c) installs or uses outside a private place any device for hearing, recording, amplifying or broadcasting sounds originating in such place which would not ordinarily be audible or comprehensible outside, without the consent of the person or persons entitled to privacy there.

"Private place" means a place where one may reasonably expect to be safe from casual or hostile intrusion or surveillance, but does not include a place to which the public or a substantial group thereof has access.

tion. Whereas § 250.12(1)(a) protects against the physical trespass for the purpose of subjecting anyone to surveillance in a private place, § 250.12(1)(b) prohibits the act of installing such surveillance devices. *See* Comment to § 250.12, ALI Model Penal Code, at 429-439 (1962).

Section 250.12(1)(c) protects against the installation or use outside a private place of devices for overhearing conversation originating within a private place. The principal case to which § 250.12(1)(c) is addressed is the installation on one side of a wall of a microphone capable of intercepting conversation in an adjoining apartment or office. It also addresses the use of a microphone which can be focused to pick up sound at a very specific location some distance away. ALI Model Penal Code, Comment to § 250.12(1)(c) at 435. "Whatever question might be raised about the possible coverage of the literal language of paragraphs (a) and (b), . . . it is clear . . . that Section 250.12 does not make it a crime for one party to a conversation to record or transmit the words or deeds of another party." *Id.* at 437. Since § 250.12 served as the basis for our § 711-1111, we find guidance from the Comments in the Model Penal Code. That the Commentary to § 711-1111 indicates an interchangeable use of the words "installation" and "use" is insufficient evidence of legislative intent to depart from the rationale behind the language adopted from the Model Penal Code, especially in light of case law regarding the weight to be accorded the Hawaii Revised Statutes Commentaries, *see, e.g., State v. Anderson,* and HRS § 701-105, *supra.*

Furthermore, we do not find a prohibited "installation" in this case. We agree with the lower court that Dr. Lee's office is a "private place," *see State v. Lo, supra,* but do not find a proscribed "installation" of a recording device. Here, the officer wore the "bug", it was not installed in Lee's private office. *Lo* is therefore distinguishable, as the recording device in that case was installed in a hotel room.

The Hawaii Wiretap Act followed the recommendation of the Hawaii Commission on Crime Report, *supra,* which says that the installation of a "bug", which necessitates a surreptitious entry into the premises, effects a greater invasion of privacy than does wiretapping. Bowman, *Hawaii's New Wiretap Law,* 14 H.B.J. 83, 85 (1978). Since the wearing of the recording device by the under-

cover agent in the case at bar did not constitute an installation in a private place by surreptitious entry, there was no violation of HRS § 803-42(b)(3). Any other interpretation of the statute would bring about the absurd result of allowing a consenting participant to a conversation to testify to what was said, but prohibiting the admission of the tape. We shall not construe statutes so as to bring about an absurd result. *State v. Ogata,* 58 Haw. 514, 572 P.2d 1222 (1977). The adversary system of justice is a fact-finding mission to seek the truth. The most accurate and reliable evidence of what was said in the conversation is the tape. Since the undercover agent is not prohibited from testifying to what was said,[5] it would be absurd to exclude the recordings. We do not believe the legislature intended such an absurd result.

Reversed and remanded for proceedings consistent with this opinion.

*Thomas M. Pico, Jr. (Tracy A. Hino* on the opening brief; *Emlyn H. Higa* on the reply brief), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*Francis T. O'Brien (David D. Cheal* with him on the brief; *O'Brien & Char,* of counsel) for defendant-appellee.

DISSENTING OPINION OF WAKATSUKI, J.,
WITH WHOM NAKAMURA, J., JOINS

I respectfully dissent.

In my view, Hawaii Revised Statutes (HRS) § 803-42(b)(3) and article I, section 7 of our state constitution clearly preclude the admissibility of the recordings suppressed by the trial court.

---

[5] The lower court said during the hearing, "I don't think there is any question that the officer can testify as to what was stated. The only question is whether or not the tapes should be admissible." (Transcript of September 23, 1982, at 8). And, the defendant's motion to suppress sought to exclude the recordings, tapes, or transcripts of the tapes, but not the testimony of the undercover agent. (Circuit Court Record at 74-75).

## I.

In enacting HRS § 803-42(b)(3), the House of Representatives' clear intention is expressed in Standing Committee Report No. 605-78, reprinted in 1978 House Journal at 1661-1662:

[T]he bill incorporates added safeguards against unwarranted invasions of privacy. The most significant differences between the bill and the federal and most other state wire-tapping statutes are the *complete prohibition of court-ordered bugging* . . . . In the interest of limiting invasions of privacy, the bill prohibits court-ordered bugging . . . . *[B]ugging requires the consent of all parties entitled to privacy in the place to be bugged* . . . . (Emphasis added.)

Similarly, the Senate's clear intention is stated in Standing Committee Report 983-78, reprinted in 1978 Senate Journal at 1172:

[T]his bill incorporates added safeguards against unwarranted invasions of privacy, the most important of which is the prohibition of bugging, that is, the use of microphones to intercept conversations.

The court's "primary duty [in interpreting and applying statutes] is to ascertain the intention of the legislature and to implement that intention to the fullest degree." *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 283, 639 P.2d 1088, 1094 (1982) (quoting *Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975)).

Here, the majority did just the opposite by ignoring the intention of the legislature and deciding admissibility on a narrow construction of the word "installation." The majority apparently reads "installation" to require affixing the recording device to some part of the physical premises. Since the recording device was attached to the police informant and not to the walls of the room or any part thereof, or its furnishings, the court reasons that there was no installation pursuant to HRS § 803-42(b)(3).

The definition of "install", however, is not so narrow. Black's Law Dictionary (5th ed. 1979) defines it as follows:

To set up or fix in position for use or service.

*Id.* at 717; *see also* The Random House College Dictionary 690 (rev. ed. 1980).

It is obvious that the recording device was installed onto the

body of the informant for use or service to record the conversation that took place in Dr. Lee's private office. Further, this obvious and more reasonable interpretation of the word "installation" in the statute is mandated by the legislature in Senate Committee Report No. 983-78, *supra*, at 1172:

> Several members of your Committee have expressed concern that this bill lacks several important privacy safeguards specifically recommended by the Crime Commission. It may be that this concern can be minimized by calling for strict judicial construction of this law . . . .

Here, "strict judicial construction" certainly is not intended to explain the construction of the word "installation." Rather, the context indicates a construction which limits the infringement of privacy rights. In other words, the legislature intended a judicial construction that would safeguard privacy rights on a *stringent* standard.

## II.

The court reasons that narrowly construing "installation" is supportable because physically affixing a recording device within a room "necessitates a surreptitious *entry* into the premises [which] effects a greater invasion of privacy than does wiretapping." (Emphasis added.)

Physical trespass is not the issue here. *Katz v. United States,* 389 U.S. 347 (1967), recognizes that the interception of oral communications concerns individuals' rights to privacy, not property rights. In *State v. Lo,* 66 Haw. 653, 675 P.2d 754 (1983), this court did say that HRS § 803-42(b)(3) involved a "statutory right associated with places." *Id.* at 661, 675 P.2d at 760. That language, however, cannot be read as suggesting that property interests control against unauthorized or unwarranted invasion into private places. The controlling interest is still an individual's right to privacy. "[HRS § 803-42(b)(3)] protects 'any private place' and the privacy of anyone rightfully there," *Id.* at 661, 675 P.2d at 760.

Trespass onto the property to install the devices was not relevant in *Lo.* In that case, the defendant was lured to a hotel room which was rigged with electronic surveillance and recording devices with the approval of the occupier of the room. The defendant's

privacy interests were at stake, not his property interests.

The majority concedes that Dr. Lee's office is a private place pursuant to HRS § 803-42(b)(3). The fact that the entry into the doctor's private office to affix a recording device was not surreptitious should not be material nor relevant. What is paramount is that under HRS § 803-42(b)(3) the privacy of Dr. Lee, who was in his private office when his conversation with the informant was surreptitiously recorded, should be fully protected.

The court speaks of the absurd result which would occur if a consenting participant may testify as to the contents of a conversation while unauthorized recordings of that conversation are inadmissible as evidence. That argument completely ignores the history of HRS § 803-42(b)(3). The legislature specifically determined, by enacting HRS § 803-42(b)(3), that conversations occurring in private places may not be recorded without the consent of all parties. In *State v. Lo, supra,* the consenting participant was free to testify as to the contents of the conversation. Nonetheless, this court held that the recordings were inadmissible.

The untenable result in this case is that the recording is admissible because the recording device was installed on the informant. Yet, a recording of the same conversation is not admissible if installed to the underside of a desk, or to the wall, or any other part of the doctor's private office. Even if the device was installed to the outside of Dr. Lee's office, or not installed at all but operated from outside the office to record the same conversation taken place in 'his private office, the majority concedes that those recordings would be inadmissible. This absurdity loses sight of the legislature's intent to protect individuals' rights to privacy in private places irrespective of the methods used.

### III.

The court found the recordings in this case unaffected by article I, § 7 of our state constitution, by relying on *State v. Okubo,* 67 Haw. 197, 682 P.2d 79 (1984), which in turn relies on *State v. Lester,* 64 Haw. 659, 649 P.2d 346 (1982). I disagree. I am of the opinion that *Okubo* and *Lester* should be overturned.

I do not concur with the majority that our state constitution

provides no greater protection for individual privacy from government intrusion than does the Fourth Amendment of the United States Constitution, and that *Katz, supra,* determines the outcome of this case. The language and history of our state's constitutional provision on search and seizure convince me that *Katz* is not dispositive of constitutional issues involving surreptitious recordings by participant monitors. *See Lester, supra,* at 667 and 672.

### A.

Prior to the 1968 Constitutional Convention, the language in the search and seizure provision of our state constitution mirrored the Fourth Amendment of our federal constitution.

During the convention, *Katz v. United States, supra,* had already been announced by the United States Supreme Court. *Katz* recognized that the Fourth Amendment protected privacy as well as property interests. Since states cannot diminish the protections accorded under the Fourth Amendment of our federal constitution, I do not question *Katz's* applicability to our state in 1968.

The 1968 Constitutional Convention, however, amended our constitutional search and seizure provision by adding thereto the underscored language as follows:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches, seizures *and invasions of privacy* shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized *or the communications sought to be intercepted.*

In view of *Katz* at the time the Convention adopted the amendments, I do not believe that such amendments were made merely to re-emphasize the holdings of *Katz.* To the contrary, the recorded history of the amendments clearly indicates that the Convention intended to give broader protection to our citizens in regards to individuals' private conduct and communications than would the holdings of *Katz.*

The Committee on Bill of Rights, Suffrage and Elections of the Convention stated:

> Your Committee recognizes the need for certain protections of the individual's right to privacy in the context of today's society.

The tremendous growth of electronic communications technology along with a corresponding growth of electronic surveillance techniques make possible the ready encroachment upon a person's private conduct and communication.

Stand. Comm. Rep. No. 55, reprinted in Proceedings of the 1968 Constitutional Convention, Vol. I, 233.

The Committee further stated:

Your Committee is of the opinion that inclusion of the term "invasions of privacy" will effectively protect the individual's wishes for privacy as a legitimate social interest. The proposed amendment is intended to include protection against indiscriminate wiretapping as well as undue government inquiry into and regulation of those areas of a person's life which are defined as necessary to insure man's individuality and human dignity.

Stand. Comm. Rep. No. 55, *supra,* at 233-234.

When the majority reasons that there is no reasonable expectation of privacy under Dr. Lee's circumstances, one must only look to Stand. Comm. Rep. No. 55, *supra,* adopted by the Convention to conclude that the majority's reasoning is clearly contrary to the expressed intent of the Convention. In furtherance of implementing the Convention's intent, the legislature enacted the Hawaii Wiretapping Law. HRS §§ 803-41 to -50. Obviously, the Convention and the legislature acknowledged that our society recognizes the reasonable expectation of privacy of a communication taking place in a private place.

### B.

Where a recorded conversation gives clear evidence of guilty acts in a criminal proceeding, the facts and abhorence of such criminal acts may give sway to not impede the government's ability to obtain criminal convictions.

In *People v. Beavers,* 393 Mich. 554, 227 N.W.2d 511 (1975), *cert. den.,* 423 U.S. 878 (1975), the Michigan Supreme Court recognized the utility and importance of participant monitoring as an investigative tool of law enforcement. But "[e]qually significant is the security and confidence enjoyed by our citizenry in knowing that the risk of intrusion by this type of electronic surveillance is subject

to the constitutional protection against unreasonable searches and seizures." *Id.* at 566, 227 N.W.2d at 515. That count further stated:

> Our laws must ensure that the ordinary, law-abiding citizen may continue to engage in private discourse, free to speak with the uninhibited spontaneity that is characteristic of our democratic society.

*Id.*

Justice Marshall, in dissent, stated in *Rawlings v. Kentucky,* 448 U.S. 98, 121 (1980),

> Because we are called on to decide whether evidence should be excluded only when a search has been "successful", it is easy to forget that the standards we announce determine what government conduct is reasonable in searches and seizures directed at persons who turn out to be innocent as well as those who are guilty.
>
> Unlike the majority, I cannot agree that our society today accepts as reasonable the possibility that anyone with whom we speak carries on him a recording device and that such recorded conversations may be used as evidence against us. Such a proposition, in my opinion, will only breed suspicion, mistrust and consequently, the result will be the destruction of our "family" society which this court should zealously protect and maintain.

> The spector of electronic eavesdropping could easily have a profound effect on the discourse of those people formerly willing to assume the risk that their listeners might betray their confidential communication. If individuals can no longer determine when they are speaking "off the record", they may lose their sense of personal security, a fragile composite of many irrational psychological factors. If this informality is destroyed, an important release mechanism for relieving social tension will cease to function.

*Comment,* B.U.L.Rev. 831, 842 (1972).

In *State v. Glass,* 583 P.2d 872, 877-878 (1978), *on rehearing* 596 P.2d 10 (1979), the Alaska Supreme Court stated:

> [M]any of the casual, the caustic, the irreverent remarks would be inhibited, as would criticism of individuals and policies. The employee could not with impunity point to shortcomings in his superiors or in the functions of his office. Families could not freely discuss the foibles of others. Clever

prodding may elicit thoughtless comments about sex, religion, politics, acquaintances, personal finances and even one's innermost thoughts. One takes the risk that his friend may repeat what has been said. One shouldn't be required to take the additional risk of an entirely different character — that his conversation is being surreptitiously transcribed or broadcast.

A confidence repeated by a false friend is received by third parties with the attendant circumstances of the "friend's" credibility and memory. One's ill-considered remarks are not thereby preserved for posterity on the reels of magnetic tape nor insulated from the faded memories inherent in the passage of time. Faced with the choice of silence or the risk that comments will be "etched in stone," a speaker may choose the former alternative, to the manifest diminution of the spontaneity which marks our daily discourse.

Our state constitution does not nullify any use of surreptitious recordings. Our constitution only requires, except in a few exceptional circumstances, that a warrant be obtained prior to conducting such searches, seizures, or invasions of privacy.

This court, in holding that participant recordings of conversations are not searches, seizures, or invasions of privacy, removes the warrant requirement. The removal of the warrant requirement effectively removes such police activities from judicial control and from the command of reasonableness. *See,* Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn. L. Rev. 349, 393 (1974). This result was never intended by the framers of our constitution, nor by our legislature.

I would affirm the suppression of the recordings.