CHARLENE KAIAMA and JOHN JARNESKY, Plaintiffs-Appellants, *v.* MAMERTO and SEBASTIANA AGUILAR, Defendants-Appellees

NO. 9893

(CIVIL NO. 7286(3))

MARCH 12, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

The Residential Landlord-Tenant Code, Hawaii Revised Statutes (HRS) Chapter 521, provides tenants with a specific remedy

for unlawful removals or exclusions from rental premises; in pertinent part the Code states:

> If the landlord removes or excludes the tenant from the premises overnight without cause or without court order so authorizing, the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount equal to two months rent or free occupancy for two months, and the cost of suit, including reasonable attorney's fees.[1]

The Circuit Court of the Second Circuit concluded after trial that Mr. and Mrs. Aguilar "removed or excluded [Charlene Kaiama and John Jarnesky] from [their] dwelling unit overnight without cause or without a court order so authorizing [and the tenants] are entitled to the remedies and penalties set out in HRS § 521-63." But it held "such relief is not mandatory and is within the [court's] discretion" and denied the tenants' prayer for recovery of a sum equal to two months rent and attorney's fees. In our opinion the circuit court misread the Code, and we reverse the decision not to award the tenants such relief.

---

[1] The foregoing is part of HRS § 521-63 (1976 & Supp. 1984) which reads:

Tenant's remedy of termination at any time; unlawful removal or exclusion. (a) If any condition within the premises deprives the tenant of a substantial part of the benefit and enjoyment of his bargain under the rental agreement, the tenant may notify the landlord in writing of the situation and, if the landlord does not remedy the situation within one week, terminate the rental agreement. The notice need not be given when the condition renders the dwelling unit uninhabitable or poses an imminent threat to the health or safety of any occupant. The tenant may not terminate for a condition caused by the want of due care by the tenant, a member of his family, or other person on the premises with his consent.

(b) If the condition referred to in subsection (a) was caused wilfully or negligently by the landlord, the tenant may recover any damages sustained as a result of the condition.

(c) *If the landlord removes or excludes the tenant from the premises overnight without cause or without court order so authorizing, the tenant may recover possession or terminate the rental agreement and, in either case, recover an amount equal to two months rent or free occupancy for two months, and the cost of suit, including reasonable attorney's fees.* If the rental agreement is terminated, the landlord shall comply with section 521-44(c). The court may also order any injunctive or other equitable relief it deems proper. If the court determines that the removal or exclusion by the landlord was with cause or was authorized by court order, the court may award the landlord the cost of suit, including reasonable attorney's fees if the attorney is not a salaried employee of the landlord or his assignee.

(Underscoring added).

I.

Mr. and Mrs. Aguilar are the owners of four houses situated at 74 Makawao Avenue, Pukalani, Maui; they reside in one and rent three to others. The landlord-tenant dispute before us involves a four-bedroom house which was occupied before August of 1983 by April Duncan and several other persons. Sometime during that month Charlene Kaiama, who was seeking shelter for herself and her family, learned the house was not fully occupied. She inquired of the owners whether they would rent the unoccupied portion to her; they were willing if April Duncan was willing to share occupancy of the premises.

Charlene Kaiama discussed this possibility with April Duncan, and they agreed to share occupancy and the rental payments. But their relationship was quickly strained by disputes. And when John Jarnesky moved in with Charlene Kaiama, the tensions were heightened. The landlords found the situation intolerable, and on September 20, 1983 they caused eviction notices to be served on Duncan, Kaiama, and Jarnesky. Duncan complied with the notice and moved out at the end of September, Kaiama and Jarnesky did not.

They encountered difficulty in locating another suitable abode, and in desperation Kaiama offered to lease the entire premises rather than only a portion of the four-bedroom dwelling. The landlords relented and had their attorney prepare a rental agreement, which was executed by the parties on October 4, 1983. A supplemental agreement limiting occupancy of the premises was also signed.

Shortly thereafter, the landlords observed what they felt was a breach of the supplemental agreement. They padlocked the door on October 8th while the tenants were out. When the tenants returned, they persuaded the landlords to let them into the house. The landlords, however, demanded the immediate payment of the rent for October, a demand the tenants could not meet. But no written demand for rent or written notice of a breach of the tenancy agreement was ever served on the tenants.

The Aguilars padlocked the door again during the tenants' absence on October 9th. But the landlords were not to be dissuaded from barring entry, and the tenants were forced to seek other

shelter for the night. The dispossessed pair sought legal advice from the Legal Aid Society the next day. Though they initially sought to regain access to the dwelling unit, they subsequently decided to terminate the rental agreement. And their attorney agreed with the landlords that the premises would be vacated on October 12th. But they did not waive any rights under the Residential Landlord-Tenant Code in doing so.

Charlene Kaiama and John Jarnesky instituted proceedings on October 13, 1983 against Mamerto and Sebastiana Aguilar, seeking relief under the Landlord-Tenant Code. The complaint averred "Defendants . . . removed or excluded Plaintiffs from the premises . . . without cause, notice, premission [sic] or a court order authorizing them to lock Plaintiffs out." It prayed for "an amount equal to two month's rent for each violation of HRS § 521-63(c)," as well as the return of a security deposit and damages for the infliction of emotional distress.

When the case was tried before the circuit court, it concluded there "was a valid and binding rental agreement," the "removal or exclusion of the . . . tenants from the dwelling unit overnight was without a court order,"[2] the "removal or exclusion was without cause,"[3] and the tenants were "entitled to the remedies and penalties set out in HRS § 521-63." It concluded further, however, that "such relief is not mandatory and is within the discretion of [the court]." And "based upon the facts and circumstances of this particular case," it held the "recovery [of twice the monthly rent] is not justifiable."[4]

---

[2] The court's conclusion here reads:

13. The Defendants removal or exclusion of the Plaintiffs as tenants from the dwelling unit overnight was without a court order authorizing the removal or exclusion. The Defendants had not properly terminated either the oral or written rental agreements through the types of notices allowed in HRS Chapter 521 and had no legal authority for summarily dispossessing Plaintiffs.

[3] The conclusion here reads:

17. Because the statute provides a remedy for failure by a tenant to pay rent, as a matter of law the landlord must avail himself of this remedy; and exclusion or removal cannot be used as substitute remedy, non-payment of rent may not be a cause justifying removal or exclusions. In result, this removal or exclusion was without cause.

[4] The trial court's findings included the following:

45. Defendants are an elderly couple, 73 and 64 years old with grade-school education and little sophistication, but a sense of responsibility and compassion

A timely appeal from the circuit court's judgment was perfected by Charlene Kaiama and John Jarnesky.[5] They raise as error the court's "holding as a matter of law that H.R.S. §521-63(c) gives [it] discretion to award an amount equal to two months rent or free occupancy for two months and the costs of suit including reasonable attorneys' fees" in a situation where the landlord unlawfully excluded tenants from rental premises.[6]

## II.

### A.

As in all cases of statutory interpretation, we look first at the language of the statute. *State v. Lo,* 66 Haw. 653, 659, 675 P.2d 754, 758 (1983); *In re Queen's Medical Center,* 66 Haw. 318, 324, 661 P.2d 1201, 1205 (1983); *Travelers Insurance Co. v. Hawaii Roofing, Inc.,* 64 Haw. 380, 383, 641 P.2d 1333, 1336 (1982). And in the absence of "a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *State v. Lo,* 66 Haw. at 659, 675 P.2d at 758 (quoting *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980)).

The language in question is from that part of the Landlord-Tenant Code providing tenants with specific remedies against land-

---

for others who are in any way themselves responsible persons.

    46. Plaintiffs, on the other hand, demonstrated a lack of credibility, responsibility, or trustworthiness and took advantage of the sympathy extended them by Defendants.

These findings obviously influenced its decision that the recovery of statutory damages was "not justifiable."

[5] The circuit court also denied the plaintiffs damages for emotional distress. It entered judgment "in favor of Plaintiffs and against Defendant in the amount of $100 in satisfaction of the security deposit, plus cost of this suit," but denied them attorney's fees.

[6] They argue in the alternative that the circuit court abused its discretion in not awarding them the relief sought. Our decision that the court was without discretion obviates the necessity to discuss this issue.

lords. *See supra* note 1. It is not complicated; where a tenant is excluded from his dwelling place "without cause or without court order so authorizing," as was the case here, he "may recover possession or terminate the rental agreement and . . . recover an amount equal to two months rent or free occupancy for two months, and the cost of suit, including reasonable attorney's fees." *Id.*

Taken at face value, the foregoing language gives a dispossessed tenant the option of repossessing the premises or terminating the rental agreement. If he elects to remain a tenant, the consistent statutory remedy would be free rent for two months. Where, as here, the tenant deems it advisable to end the relationship, the appropriate relief, of course, would be damages in the stated amount. Nothing in the language suggests the court is vested with authority to withhold at its discretion remedies fashioned by the legislature. Thus, the plain meaning of the language of HRS § 521-63(c) would compel a reversal of the circuit court's decision not to allow the recovery of two months rent and attorney's fees by tenants who were locked out without cause or court order.

"But we have rejected an approach to statutory [interpretation] which limits us to the words of a statute, no matter how clear they may appear upon perfunctory review." *Crawford v. Financial Plaza Contractors,* 64 Haw. 415, 420, 643 P.2d 48, 52 (1982). For we recognize "our primary duty [in interpreting statutes] is to ascertain the intention of the legislature and to implement that intention to the fullest degree," *Keller v. Thompson,* 56 Haw. 183, 189, 532 P.2d 664, 669 (1975); and where "there is . . . material evidencing legislative purpose and intent, there is no reason for a court to seek refuge in 'strict construction,' 'plain meaning,' or 'the popular sense of the words.' " *Black Construction Corp. v. Agsalud,* 64 Haw. 274, 284, 639 P.2d 1088, 1094 (1982), *appeal dismissed,* 459 U.S. 1011 (1982).

We therefore turn to the history of HRS § 521-63(c) to ascertain whether the legislature might have had another meaning in mind when it adopted the language in question. But "we do so with the recognition that only [a clear] showing of contrary intentions from that data would justify a limitation on the 'plain meaning' of the statutory language." *Garcia v. United States,* _____ U.S. _____, _____, 105 S. Ct. 479, 482-83 (1984).

**B.**

The Residential Landlord-Tenant Code was enacted "to establish a comprehensive residential landlord-tenant code under which the law governing residential landlord and tenant relations would be restated in a manner consistent with recent court decisions, with the residential rental market, and with the objective of improving such landlord and tenant relations." Sen. Stand. Comm. Rep. No. 477-72, in 1972 Senate Journal, at 948; Hse. Stand. Comm. Rep. No. 659-72, in 1972 House Journal, at 961. As enacted in 1972, the Code in pertinent part provided for the recovery of "damages sustained and the cost of suit, including reasonable attorney's fees" where the landlord "exclude[d] the tenant from the premises overnight without cause or without court order so authorizing."[7] The relevant portion of a legislative committee report reiterated the statutory language by stating "[t]he tenant is also entitled to damages if the landlord removes or excludes him from the premises overnight." *See* Hse. Stand. Comm. Rep. No. 659-72, *supra,* at 962. It said nothing about a judge's discretionary authority to deny damages. *Id.*

When the present language of HRS § 521-63(c) specifying the recovery of "an amount equal to two months rent or free occupancy for two months" was adopted in 1981, a committee report accompanying the amendatory legislation restated the purpose of the relevant part of the bill. The purpose, the report said, was to "[a]mend Section 521-63(c) to authorize recovery in the amount of two months rent or two months free occupancy by a tenant wrongfully removed by a landlord from the rented premises." Sen. Stand.

---

[7] As enacted originally, HRS § 521-63(c) read:
(c) If the landlord removes or excludes the tenant from the premises overnight without cause or without court order so authorizing, the tenant may recover possession or terminate the rental agreement and, in either case, recover damages sustained and the cost of suit, including reasonable attorney's fees. If the court determines that the removal or exclusion by the landlord was with cause or was authorized by court order, the court may award the landlord the cost of suit, including reasonable attorney's fees if the attorney is not a salaried employee of the landlord or his assignee.
*See* S.L.H. 1972, c. 132, § 1.

Comm. Rep. No. 778, in 1981 Senate Journal, at 1247. Again the committee reports contained no reference to a judge's discretionary power to award or deny a statutory remedy.

Our survey of the legislative history thus discloses no basis for departing from the literal language of the statute, and we have no choice but to give effect to its plain meaning. *State v. Lo*, 66 Haw. at 659, 675 P.2d at 758. The trial court, we conclude, had no discretionary power to deny an amount equal to two months rent and attorney's fees to tenants who were locked out without cause or court order even though it found they "took advantage of the sympathy extended them by [the landlords]." *See supra* note 4.

The judgment of the circuit court is vacated in part, and the case is remanded for the entry of a judgment consistent with this opinion.

*Isaac Hall* for appellants.
*Antonio V. Ramil* for appellees.