STATE OF HAWAII, Plaintiff-Appellee, *v.* RONALD R. M. MONIZ, Defendant-Appellant

NO. 11825

(CRIMINAL NO. 50486)

AND

STATE OF HAWAII, Plaintiff-Appellee, *v.* RICHARD EITOKU HENZAN, Defendant-Appellant

NO. 11826

(CRIMINAL NO. 52311)

SEPTEMBER 10, 1987

LUM, C.J., NAKAMURA, PADGETT, AND WAKATSUKI, JJ., AND INTERMEDIATE COURT OF APPEALS ASSOCIATE JUDGE HEEN IN PLACE OF HAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY LUM, C.J.

Ronald R. M. Moniz and Richard Eitoku Henzan (collectively "Appellants") are two unrelated individuals who were committed to the Hawaii State Hospital after being acquitted on criminal charges on the basis of mental disease. In 1986, Appellants sought permission to go on unescorted leaves from the hospital. They filed motions in the Circuit Court of the First Circuit seeking court approval for hospital officials to authorize the leave privileges. The circuit court determined that its approval was unnecessary and denied the motions. Appeals were noticed and consolidated by this court. Our review of the record reveals that the consolidated appeal is not properly before us. Nevertheless, because of the important interests involved, we deem this an appropriate instance in which to invoke our supervisory power and reverse.

I.

On March 6, 1978, pursuant to a jury verdict, a circuit court of the First Circuit acquitted Appellant Moniz of sexual abuse in the first degree in violation of § 707-736 of the Hawaii Revised Statutes ("HRS") on the ground of mental disease or disorder. On May 31, 1979, a circuit court of the First Circuit acquitted Appellant Henzan of attempted murder in violation of HRS §§ 705-500 and 707-701 on the ground of mental disease. Their respective courts committed Moniz and Henzan to the custody of the Director of the Department of Health for placement at the Hawaii State Hospital pursuant to HRS § 704-411.

The record becomes unclear at this stage. It appears that sometime before August 22, 1986, Appellants sought permission to take

leave from the hospital without being escorted by hospital personnel. Moniz requested a day pass while Henzan sought time on leave not to exceed thirty days. There are indications in the record that the hospital administrator was inclined to permit the unescorted leaves. However, there is also evidence which suggests that neither the Director of Health nor the hospital administrator would grant these privileges without court approval.

On August 22, 1986, Appellants filed motions seeking court approval for the authorization of unescorted leaves from the hospital pursuant to HRS § 334-75. Section 334-75 provides that if a patient is in a psychiatric facility as a result of a charge under Chapter 707, HRS (relating to crimes against the person), court approval must be obtained before the administrator of the facility may authorize the patient's release.

The circuit court interpreted the statute to require court approval only when there were pending Chapter 707 charges. Since Appellants had been acquitted, there were no pending charges and the court held that its approval was unnecessary (*i.e.*, that the hospital administrator could authorize the leave privileges without court approval). Accordingly, the circuit court denied the motions seeking court approval. Appellants did not seek the hospital administration's authorization for leave, but brought this consolidated appeal.

II.

Although the matter of jurisdiction was not raised by the parties, appellate courts are under an obligation to insure that they have jurisdiction to hear and determine each case. *See In re Rice*, 68 Haw. ___, 713 P.2d 426 (1986) (subject matter jurisdiction); *Fasi v. State Public Employment Relations Board*, 60 Haw. 436, 591 P.2d 113 (1979) (standing). *See also Familian Northwest, Inc. v. Central Pacific Boiler & Piping, Ltd.*, 68 Haw. ___, 714 P.2d 936 (1986) (finality).

Appellants' failure to apply to the hospital administrator for leave privileges indicates that this appeal is not ripe.[1] *See State v. Fields*, 67 Haw. 268, 274-75, 686 P.2d 1379, 1385-86 (1984).

---

[1] Were applications for leave privileges made and granted, this entire appeal would be moot.

Moreover, a proper reading of the orders denying the Appellants' motions reveals that Appellants were not aggrieved thereby and, therefore, they lack standing to challenge the orders in this appeal.[2] *See Reliable Collection Agency, Ltd. v. Cole,* 59 Haw. 503, 510-11, 584 P.2d 107, 111-12 (1978); *Inter-Island Resorts, Ltd. v. Akahane,* 44 Haw. 93, 99, 352 P.2d 856, 860 (1960). Thus, because of the absence of ripeness and standing, we are without jurisdiction to consider this appeal.

We may yet address the question presented by invoking the supervisory power we possess to correct errors in the lower courts.[3] "However, a strong commitment to the prudential rules shaping the exercise of our jurisdiction has resulted in a sparing use of this extraordinary power." *State v. Fields,* 67 Haw. at 276, 686 P.2d at 1386 (citation omitted).

This court will employ its supervisory power only upon a showing of compelling circumstances. *State v. Estrada,* 69 Haw. ___, 738 P.2d 812 (1987) (judge's entry into jury room to personally answer juror questions); *State v. Swafford,* 68 Haw. ___, 729 P.2d 385 (1986) (confidentiality of informant); *Gannet Pacific Corp. v. Richardson,* 59 Haw. 224, 580 P.2d 49 (1978) (trial court's closure of hearing to public); *Sapienza v. Hayashi,* 57 Haw. 289, 554 P.2d 1131 (1976) (disqualification of the city prosecutor from presenting matter to grand jury). *Cf. State v. Ui,* 66 Haw. 366, 663 P.2d 630 (1983) (invocation of supervisory power unnecessary where trial court properly interpreted statute).

There are two reasons which convince us that this is an appropriate occasion for us to invoke our supervisory power. First, the statute in question here was adopted out of concern for public safety. The public safety is always an important consideration for any judicial determination. The orders of the circuit court, fairly construed, increase the risk that prematurely released patients may

---

[2] The circuit court's holdings actually made it easier for Appellants to obtain leave privileges. Instead of having to procure both the court's approval and the administrator's authorization, the court only required Appellants to obtain the administrator's authorization.

[3] Section 602-4, HRS (1985) provides: "*Superintendence of inferior courts.* The supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law."

endanger the public. Second, it appears that the lower courts have differed in their interpretations of the statute, a classic example of when this court should exercise its supervisory power. We now proceed to consider the merits of this appeal.

## III.

Appellants pose but one question: Does section 334-75 require a court to give its approval before a patient, committed as a result of a charge under Chapter 707 (relating to offenses against persons), may obtain authorization from a psychiatric facility to go on an unescorted leave? In relevant part, § 334-75, HRS (1985) provides:

> The administrator of a psychiatric facility . . . may grant authorized absence from the facility to any patient . . .; provided that if a patient has been admitted or committed on court order after having been charged with a felony or misdemeanor pursuant to chapter 707, an absence can be authorized only with the prior approval of the court, except where the absence is supervised[.]

The circuit court interpreted the statute to mean that court approval was necessary to authorize leaves only when there were *pending* Chapter 707 charges against the patient. Because Appellants had been acquitted of the Chapter 707 crimes, the court concluded that its approval was unnecessary. The court erred.

Although we have rejected an approach to statutory construction which limits us to the words of a statute, no matter how clear they may appear upon perfunctory review, it is still fundamental that the starting point for interpreting a statute is the language of the statute itself. *State v. Lo,* 66 Haw. 653, 659, 675 P.2d 754, 758 (1983). The plain language of the statute requires court approval for the release of a person admitted to the hospital "after having been charged" with a Chapter 707 crime. Nowhere in the statute or its legislative history is there anything to suggest that the Chapter 707 charge must remain pending.

What the legislative history of § 334-75 does indicate is that it was intended to enhance public safety by restricting the authority of the administrator of a psychiatric facility to grant leaves of ab-

sence. "[P]ublic safety necessitates closer supervision of patients who are committed to psychiatric facilities by the court following charges of a criminal nature. There is a need to protect the public by assuring that the release of the patient does not present a danger to others." Hse. Stand. Comm. Rep. No. 555-82, *reprinted in* 1982 House Journal at 1144. Public safety concerns are particularly compelling where patients have been charged with offenses against persons (as opposed to property). *See* Sen. Stand. Comm. Rep. No. 650-82, *reprinted in* 1982 Senate Journal at 1225.

We conclude that court approval is necessary before the Hawaii State Hospital may authorize the unsupervised leave of Appellants.

The orders appealed from are reversed and the case is remanded to the circuit court for a determination as to whether authorization for unescorted leave by Appellants should be approved.

*Susan Barr (Cheryl D. Holland* with her on the brief) Deputy Public Defenders for Defendants-Appellants.

*Arthur Ross (Willard J. Peterson* on the brief) Deputy Prosecuting Attorneys for Plaintiff-Appellee.