462

32 P.3d 106

STATE of Hawaii, Plaintiff–Appellee,

v.

Daniel Alan JOHNSON, aka Steven
James Day, Defendant–
Appellant.

No. 22885.

Intermediate Court of Appeals of Hawai'i.

Aug. 2, 2001.

Reconsideration Denied Aug. 27, 2001.

Certiorari Denied Oct. 8, 2001.

Harry Eliason, on the briefs, for defendant-appellant.

Lincoln S.T. Ashida, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellee.

BURNS, C.J., WATANABE and LIM, JJ.

Opinion of the Court by LIM, J.

Defendant–Appellant Daniel Alan Johnson aka Steven James Day (Defendant) appeals the September 1, 1999 Findings of Fact and Conclusions of Law and Order denying his Motion to Withdraw Plea of No Contest and [For] Other Relief entered by the circuit court of the third circuit, the Honorable Greg K. Nakamura, judge presiding.[1] We dismiss the appeal for lack of appellate jurisdiction.

## I. Background.

On May 3, 1995, Defendant was charged by complaint with murder in the second degree, in violation of Hawaii Revised Statutes (HRS) § 707–701.5(1) (1993); kidnapping, in violation of HRS § 707–720(1)(e) (1993); burglary in the first degree, in violation of HRS § 708–810(1)(c) (1993); terroristic threatening in the first degree, in violation of HRS §§ 707–715(1) (1993) and 707–716(1)(d) (1993); carrying or use of a firearm in the commission of a separate felony, in violation of HRS § 134–6(a) (1993); and two counts of prohibited ownership or possession of a firearm, in violation of HRS § 134–7(b) (1993).

On April 2, 1997, during the jury trial, the State's only eyewitness to the alleged crimes, Jennifer Brohaugh (Brohaugh), admitted that she had lied numerous times during a prior court hearing and also in her statement to the police shortly after the incident.

On April 4, 1997, two days after Brohaugh admitted to lying, Defendant pled no contest to the charge of manslaughter (as a lesser included offense of murder in the second degree), as part of a plea agreement with the State.[2] The deal provided that the State would dismiss all other charges; that Defendant would be sentenced to a ten-year indeterminate term of imprisonment, then extradited to Minnesota to face prosecution for

---

1. The jury trial, the change of plea hearing and the sentencing hearings were conducted by the Honorable Riki May Amano.

2. Hawaii Revised Statutes (HRS) § 707–702(1)(a) (1993) provides that "[a] person com-

mits the offense of manslaughter if ... [h]e recklessly causes the death of another person[.]"

charges he faced there;[3] that the State would not seek an extended term of imprisonment; and that the State would not argue before the parole board to bring Defendant back from Minnesota after he served his prison sentence there, provided that the parole authority could nevertheless require Defendant's return to Hawai'i.

Before accepting Defendant's plea, the court addressed him and determined that he understood the nature of the charge to which the plea was offered and the maximum penalty therefor provided by law, and that by pleading no contest he was waiving his right to a trial and other rights inherent therein.[4] The court also verified the voluntariness of Defendant's plea:[5]

> THE COURT: Is it your personal and voluntary decision to enter this plea of no contest to the charge of manslaughter?

3. At the time of the entry of Defendant's no contest plea, the State of Minnesota had outstanding warrants for him and had indicated that it wanted to prosecute him on the underlying charges. Defendant's position regarding his return to Minnesota was that "the deal that I wanted in this case is if I was going to have to spend time in prison, I wanted to do it there where my family and friends are."

4. At the time of the offense, manslaughter was a class B felony. The maximum prison sentence therefor was an indeterminate term of imprisonment of ten years. HRS §§ 707–702(3) & 706–660 (1993). In 1996, HRS § 707–702 was amended and now provides that "[m]anslaughter is a class A felony" carrying a mandatory indeterminate term of imprisonment of twenty years. HRS §§ 707–702(3) & 706–659 (Supp.2000).

At the change of plea hearing, Defendant was twice informed by the court that he was subject to a maximum indeterminate term of imprisonment of ten years and a fine of $25,000.00. The maximum penalties were also written on the change-of-plea form that Defendant said he had read and signed.

The court also informed Defendant that he was giving up certain rights, including the requirement that the State prove its charges beyond a reasonable doubt; the right to a trial by jury; the right to "see, hear, and question witnesses that come to court; the right to present witnesses on your own; subpoena people to come to court; the right to take the stand, if you so chose, to tell the jury your side of the story ... [and] the right to remain silent[.]" The court asked Defendant whether his attorney had explained the charges, and had discussed the evidence against him and his possible defenses. To this, Defendant responded affirmatively. The court also explained to Defendant the possible consequences of conviction for those who are not citizens of the United States.

5. Hawai'i Rules of Penal Procedure (HRPP) Rule 11 (1999) provides, in pertinent part:

(c) **Advice to Defendant.** The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that he understands the following:

(1) the nature of the charge to which the plea is offered; and

(2) the maximum penalty provided by law, and the maximum sentence of extended term of imprisonment, which may be imposed for the offense to which the plea is offered; and

(3) that he has the right to plead not guilty, or to persist in that plea if it has already been made; and

(4) that if he pleads guilty or nolo contendere there will not be a further trial of any kind, so that by pleading guilty or nolo contendere he waives the right to a trial; and

(5) that if he is not a citizen of the United States, a conviction of the offense for which he has been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States.

(d) **Insuring That the Plea Is Voluntary.** The court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement. The court shall also inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from any plea agreement.

(e) **Plea Agreement.**

(1) IN GENERAL. The prosecutor and counsel for the defendant, or the defendant when acting pro se, may enter into plea agreements that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to an included or related offense, the prosecutor will take certain actions or adopt certain positions, including the dismissal of other charges and the recommending or not opposing of specific sentences or dispositions on the charge to which a plea was entered. The court may participate in discussions leading to such plea agreements and may agree to be bound thereby.

(2) NOTICE OF PLEA AGREEMENT. Any plea agreement shall be disclosed by the parties to the court at the time the defendant tenders his plea. Failure by the prosecutor to comply with such agreement shall be grounds for withdrawal of the plea.

(3) WARNING TO DEFENDANT. Upon disclosure of any plea agreement, the court shall not accept the tendered plea unless the defendant is informed that the court is not

THE DEFENDANT: Yes, it is, your Honor.

THE COURT: And is this a decision that you have made because someone has forced you, put pressure on you, or—I'm sorry, threaten [sic] you in any way at all?

THE DEFENDANT: Ah, no, no one has.

THE COURT: Are you doing this to cover up for someone else or protect someone else from prosecution?

THE DEFENDANT: No, I'm not.

THE COURT: Did you understand the maximum penalty for this offense?

THE DEFENDANT: Yes.

. . . .

THE COURT: Other than [the plea agreement], have there been any other promises or agreements made to you in relation—or in exchange for your plea to this manslaughter charge?

THE DEFENDANT: No, there haven't.

THE COURT: And the Court has not made any promises to you whatsoever regarding any of these issues or any sentence at all; is that true?

THE DEFENDANT: That's correct.

. . . .

THE COURT: All right. Do you still wish to go forward with the no contest plea?

THE DEFENDANT: Yes, I do.

THE COURT: And, . . . is there any question that you have right now? Do you have a change of heart in any way? Are you sure this is what you want to do?

THE DEFENDANT: Yes, this is what I want to do, your Honor.

THE COURT: In that case, I'm satisfied that the plea of no contest offered by [Defendant] today is freely and voluntarily offered, and I so find.

In addition, Defendant stated that he had read and understood the change-of-plea form, that his attorney had explained it to him, that his mind was clear, and that he fully understood what was happening.[6]

On June 24, 1997, Defendant returned to court for sentencing. In the interim, however, the State of Minnesota had dismissed its charges against him. As a result, Defendant and the State entered into a sentencing agreement that provided he would be sentenced to a ten-year indeterminate term of imprisonment, but that once courtesy supervision was set up with the State of Minnesota, his sentence would be amended to a five-year term of probation. Defendant would then complete his probation sentence under the supervision of the Minnesota probation authorities. The court went along with the agreement and sentenced Defendant accordingly.

In October of 1997, while he was still incarcerated in the State of Hawai'i, Defendant filed a motion to withdraw his plea. The affidavit of counsel attached to the motion stated that "[t]he defendant should be placed on probation and permitted to return to the State of Minnesota or that he be permitted to withdraw his plea and proceed immediately to trial[.]"

At the October 28, 1997 hearing on Defendant's motion, the parties agreed to continue the hearing in anticipation of completing the arrangements necessary to send Defendant to Minnesota to serve his sentence of probation. During the hearing, the court addressed Defendant and his counsel about the consequences of his sentencing agreement:

THE COURT: [Defense counsel, y]our understanding is that any matters that he has raised in regards to the withdrawal of his plea are moot based on his probation. Should he violate any terms and conditions of probation the Court is free to sentence him to any legal sentence, which would

---

bound by such agreement, unless the court agreed otherwise.

**6.** Defendant indicated that he had taken some prescription medicine—imipramine, "the normally prescribed medication that I take, it does not impair my thinking or my judgment at all"—

for his panic disorder prior to the hearing. He confirmed that he was not feeling any effects of his panic disorder. He also stated that the medicine did not make him drowsy or affect his thinking.

likely be a sentence of imprisonment for ten years.

In essence, [Defendant], you need to also know that by executing all these documents, getting probation at this time with those conditions in place, you were waiving all—almost all of your rights to withdraw your plea there 'cause there won't be an opportunity to withdraw your plea after that. You understand that?

THE DEFENDANT: Yes, I do.

. . . .

THE COURT: [Y]ou will be required to follow all the orders of the court and should you fail to do that the State of Hawaii will extradite you, move to resentence you, and the resentence will likely be ten years in prison.

THE DEFENDANT: I understand, Your Honor.

The motion to withdraw plea was continued until moved on by Defendant.

On November 7, 1997, Defendant filed a motion to enforce the sentencing agreement to place him on probation. During the November 10, 1997 hearing on the motion, the court indicated that the Minnesota probation authorities would not accept Defendant for courtesy supervision until he was actually placed on probation. As a result, the court granted Defendant's motion to enforce the settlement agreement, sentencing him to long-distance probation with the Hawai'i probation authorities until courtesy supervision by the Minnesota probation authorities could be arranged. The court went over the terms and conditions of probation with Defendant and advised him that any violation thereof would be cause for revocation of his probation.[7] In response to the court's inquiries, Defendant confirmed that he understood what was happening and that his mind was clear. Defendant also acknowledged that the granting of his motion for the probation sentence meant that he would not be able to thereafter withdraw his no contest plea:

[DEFENDANT'S COUNSEL]: Um, I wanna make sure the record is clear from the last time, October 28, [the court] indicated to [Defendant] that the—any issues in regards to, um, uh, withdrawal of plea are hereby waived, um, given the fact that he has probation.

And he acknowledged at the last time, but I want to make sure on the record he acknowledges it again.

THE COURT: [Defendant], you understand what's going on?

THE DEFENDANT: Yes, I do, Your Honor.

THE COURT: And are you clear thinking at this time?

THE DEFENDANT: Yes, I am.

THE COURT: And I know that you are able to understand English. I've seen you in court many times and reviewed many of your papers.

You—do you have any questions about what is happening?

7. Among the standard and special terms and conditions of probation imposed by the court were the following (standard terms are enumerated; special terms are alphabetized):

1. You must not commit another federal or state crime during the term of probation;

. . . .

3. You must remain within the jurisdiction of the court unless granted permission to leave by the court or a probation officer;

4. You must notify a probation officer prior to any change in address or employment;

. . . .

A. Follow all reasonable instructions which are given to you by your probation officer;

B. You shall sign a waiver of extradition.

C. You shall proceed directly from the jail to the airport . . ., and thereafter proceed directly to Minnesota.

D. You shall call the Adult Probation Division as soon as you arrive in Minnesota.

E. You shall contact the paroling or probation authority in Minnesota within 48 hours of your arrival, and report the name of the person you spoke to and the telephone number to your probation officer.

F. You shall cooperate with the Adult Probation Division in arranging courtesy supervision.

G. You shall refrain from the possession or consumption of alcohol or drugs, except as prescribed by a physician.

. . .

N. You shall not return to the Island of Hawai'i without the prior written permission of the Adult Probation Division.

THE DEFENDANT: No, I don't, Your Honor.

THE COURT: You understand that you will not be able to withdraw your plea to manslaughter?

THE DEFENDANT: I realize that.[8]

(Footnote added.)

On July 15, 1998, the State filed a Motion for Revocation of Probation and to Resentence. The motion alleged that Defendant had violated the terms and conditions of his probation when he was convicted in Minnesota of the offense of Controlled Substance Crime in the Fifth Degree.[9]

On March 30, 1999, Defendant filed his motion to withdraw his plea of no contest and for other relief. The memorandum and counsel's affidavit in support of the motion asserted that Defendant should be allowed to withdraw his no contest plea because (1) the State breached the plea agreement; (2) his plea was involuntary "due to the combination of the pressure of the situation, his psychiatric condition that included panic disorder, and his use of prescribed medications"; (3) the court imposed an illegal sentence "due to its failure to comply with the interstate compact as to state-to-state supervision of persons on probation"; (4) the court failed to follow the mandates of Hawai'i Rules of Penal Procedure (HRPP) Rule 11; and (5) the motion for revocation of probation presented the possibility that Defendant would face much longer prison time upon resentencing than that contemplated by the original plea agreement. In addition to withdrawal of the plea, the motion requested the following relief:

2. For modification of the Amended Judgment, Guilty Conviction and Probation Sentence dated November 10, 1997, to correct an illegal sentence.

3. For an order of the Court dismissing the State of Hawaii's motion for revocation of probation and to resentence the Defendant.

4. In the alternative, for an order of the Court enforcing the settlement agreement between the State of Hawaii and the Defendant and placing Defendant on probation.

5. In the alternative, for an order of the Court resentencing Defendant to a term of probation with credit for time served since the initiation of the revocation of probation proceedings currently before the Court.

On September 1, 1999, the court issued its findings of fact and conclusions of law and order denying Defendant's motion to withdraw his plea and for other relief. On September 24, 1999, Defendant filed an *ex parte* motion for leave to take an interlocutory appeal. The court denied the motion. On September 30, 1999, Defendant filed his notice of this appeal.

In attacking the circuit court's denial of his motion to withdraw his no contest plea, Defendant on appeal first contends that the court violated the mandates of HRPP Rule 11. In essence, Defendant argues that each new sentencing agreement reached, after his plea of no contest was entered, was a new plea agreement requiring a new HRPP Rule 11 colloquy, the absence of which deprived him of constitutional due process of law. Defendant also argues, in support of withdrawal of his plea, that the court imposed an illegal sentence upon him, in that the terms and conditions of probation relating to Defendant's transfer to Minnesota and return to Hawai'i were an unconstitutional "deprivation of liberty[,]" that an alleged condition of probation requiring him to dismiss his civil lawsuits was an unconstitutional "deprivation of both liberty and property[,]" that the long-distance probation violated several statutory provisions relating to probation and courtesy

---

**8.** If we had appellate jurisdiction over the circuit court's order denying Defendant's motion to withdraw plea, it would be Defendant's burden to show that he did not waive any claim to withdraw his plea.

**9.** On March 18, 1998, in Minnesota, Defendant pled guilty to the charge of Controlled Substance Crime in the Fifth Degree. Imposition of sentence was stayed for 24 months and Defendant was placed on probation for two years. As a condition of probation, Defendant served six months in jail. The State contended that Defendant thus violated the terms and conditions of his probation prohibiting conviction of a crime and the use of drugs.

probation supervision, that he was denied his right to allocution at the November 10, 1997 resentencing hearing, and that revocation of Defendant's probation would result in a longer prison term than was contemplated in the original plea agreement. In his reply brief, Defendant adds yet another argument to his appeal, that he reasonably believed that conversion of his ten-year indeterminate term of imprisonment to a five-year term of probation meant that he could be subject to only a five-year prison term upon revocation of that probation.

## II. Jurisdiction.

■ The State does not dispute appellate jurisdiction. "Although the matter of jurisdiction was not raised by the parties, appellate courts are under an obligation to insure that they have jurisdiction to hear and determine each case." *State v. Moniz*, 69 Haw. 370, 372, 742 P.2d 373, 375 (1987) (citations omitted).

■ "[T]he right of appeal in a criminal case is purely statutory and exists only when given by some constitutional or statutory provision. Therefore, the right of appeal, and, by extension, the parameters of appellate jurisdiction, are limited as provided by the legislature through statute." *State v. Domingo*, 82 Hawai'i 265, 268–69, 921 P.2d 1166, 1169–70 (1996) (citations and internal quotation marks and block quote format omitted).

Defendant first contends that jurisdiction is founded on HRS § 641–11. HRS § 641–11 (1993) provides, in pertinent part, that

[a]ny party deeming oneself aggrieved by the judgment of a circuit court in a criminal matter, may appeal to the supreme court, subject to chapter 602 in the manner and within the time provided by the Hawaii Rules of Appellate Procedure. The sentence of the court in a criminal case shall be the judgment.

Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) (1999) provided, in relevant part, that

[i]n a criminal case, whether the appeal is one of right or is an interlocutory appeal, the notice of appeal by a defendant shall be filed in the circuit or district court within 30 days after the entry of the judgment or order appealed from.

■ In this case, final judgment (sentence) was entered on November 10, 1997. Defendant did not appeal from that judgment within the thirty-day time period mandated by HRS § 641–11 and HRAP Rule 4(b). Defendant instead appeals the circuit court's September 1, 1999 order denying his motion to withdraw his no contest plea. His September 30, 1999 notice of appeal was filed almost two years after his sentence was amended, and only after he found out that the State had filed a motion to revoke his probation. The July 15, 1998 motion for revocation is still pending. Defendant argues that his March 30, 1999 motion to withdraw plea somehow "reopened the [November 10, 1997] final judgment for review by the trial court[,]" such that the September 1, 1999 order denying the motion became the appealable final judgment under HRS § 641–11 and HRAP Rule 4(b). We disagree, and conclude that Defendant did not timely appeal from a final judgment, pursuant to those statutes.

■ Defendant also asserts that the order denying his motion is an appealable final order, "as it has the effect of ending the litigation regarding the withdrawal of the plea." In support of this position, Defendant cites *State v. Nguyen*, 81 Hawai'i 279, 916 P.2d 689 (1996), and *State v. Adams*, 76 Hawai'i 408, 879 P.2d 513 (1994).

In *Nguyen*, the defendant, a resident alien facing deportation by reason of his drug conviction, filed a motion to withdraw the underlying no contest plea almost eight years after he was sentenced to a five-year term of probation. The circuit court denied his motion to withdraw, and the supreme court, without discussing jurisdictional issues, affirmed. *Nguyen*, 81 Hawai'i at 293, 916 P.2d at 703.

In *Adams*, seven days after the defendant was sentenced to a five-year prison term, he moved the circuit court to reconsider its denial of his pre-sentence motion to withdraw his no contest plea. The circuit court denied his motion for reconsideration and he appealed, more than seven months after the entry

of judgment.[10] Without discussing any jurisdictional issues, the supreme court vacated the circuit court's order denying the defendant's post-sentence motion to withdraw his plea and remanded for an entry of an order vacating his sentence and granting the motion. *Adams*, 76 Hawai'i at 415, 879 P.2d at 520.

Both *Adams* and *Nguyen* are, however, distinguishable from this case. In each case, the order appealed from constituted the final action of the circuit court in the case. The denial of Nguyen's motion to withdraw his no contest plea ended the State proceedings, as he had apparently already served his probation sentence by the time he filed his motion to withdraw his no contest plea. The circuit court's denial of Adam's motion for reconsideration of its denial of his presentence motion to withdraw his no contest plea left him in prison pursuant to his sentence. In each case, no further proceedings remained pending below after the circuit court's denial of the subject motion.

In this case, it is clear that Defendant filed his March 30, 1999 motion to withdraw his no contest plea because the State had filed its July 15, 1998 motion to revoke his probation. While the order denying Defendant's motion disposed of the issue of the validity of his plea, the State's motion for revocation of probation is still pending. The revocation hearing may result in revocation and resentencing, or in a denial of the motion for revocation. In his motion to withdraw his plea, Defendant prayed, alternatively, for dismissal of the State's motion for revocation or "for an order of the Court enforcing the settlement agreement between the State of Hawaii and the Defendant and placing Defendant on probation." A denial of the revocation motion would accomplish just that; Defendant would remain on probation in ac-

cordance with the November 10, 1997 judgment and sentence of the court. Even if the court decides to revoke Defendant's probation, it may yet resentence him to probation, under terms and conditions he could live with. In either event, Defendant might choose not to resurrect his appellate attack on the validity of his no contest plea, and we would thus have one less appeal with which to contend. In any event, even if the court revokes Defendant's probation and resentences him to a term of imprisonment, an appeal from the new judgment could encompass not only issues relating to Defendant's no contest plea, but also any issues that may arise relating to the revocation and the resentencing, thus promoting judicial economy by eliminating the possibility of multiple appeals arising from the same revocation proceeding. *See, e.g., Abrams v. Cades, Schutte, Fleming & Wright,* 88 Hawai'i 319, 324, 966 P.2d 631, 636 (1998) ("the potential for harm by deferring appellate review is outweighed by the concerns of delay imposed by piecemeal review of the trial court's decisions").

█ A "post-judgment order is appealable in its own right only if it meets the test of finality applicable to all judicial decisions." *Powers v. Ellis,* 55 Haw. 414, 416, 520 P.2d 431, 433 (1974). A final order has been defined, albeit in the context of a civil case, as "an order ending the proceedings, leaving nothing further to be accomplished. Consequently, an order is not final if the rights of a party involved remain undetermined or if the matter is retained for further action." *Familian Northwest v. Central Pacific Boiler,* 68 Haw. 368, 370, 714 P.2d 936, 937 (1986) (citations and internal block quote format omitted). In *Familian,* the circuit court's denial of the garnishees' motion to quash the garnishee summons merely "perpetuated the [garnishment] proceedings. It determined

10. In *State v. Adams,* 76 Hawai'i 408, 879 P.2d 513 (1994), the judgment was entered on May 15, 1992. On May 22, 1992, Adams moved the court to reconsider its denial of his presentence motion to withdraw his plea. The hearing on the motion concluded on October 30, 1992. The circuit court finally disposed of the matter on November 27, 1992, when it entered its Findings of Fact and Conclusions of Law and Order denying Adams's motion to reconsider. Adams filed his notice of appeal on December 23, 1992. *Id.*

at 410–11, 879 P.2d at 515–16. We have held that a motion for reconsideration of sentence is not a tolling motion under Hawai'i Rules of Appellate Procedure (HRAP) Rule 4(b) (1999) (in relevant part, "[i]f a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 30 days after the entry of an order denying the motion"). *State v. Naone,* 92 Hawai'i 289, 300, 990 P.2d 1171, 1182 (App.1999).

that the summons was properly issued which enabled the proceedings to continue." Hence, it was not a final, appealable order. *Id.* at 370, 714 P.2d at 938. In light of the motion for revocation of probation and resentencing still pending in this case, we conclude that the September 1, 1999 order denying Defendant's motion to withdraw no contest plea and for other relief is not a final order and is not appealable on that basis.[11]

▆▆▆▆ Defendant also argues that an order denying a motion to withdraw a plea falls within the "collateral order exception" to the final judgment or order rule. "Under this exception, certain orders fall in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *State v. Baranco,* 77 Hawai'i 351, 353, 884 P.2d 729, 731 (1994) (citation and internal quotation marks omitted).

▆▆▆▆ "[U]nder the collateral order exception, an interlocutory order is appealable if it: (1) fully disposes of the question at issue; (2) resolves an issue completely collateral to the merits of the case; and (3) involves important rights which would be irreparably lost if review had to await a final judgment." *State v. Ontiveros,* 82 Hawai'i 446, 450, 923 P.2d 388, 392 (1996) (citations and internal block quote format omitted).

For the exception to apply, all three requirements must be met. *Abrams,* 88 Hawai'i at 322, 966 P.2d at 634 ("The collateral order doctrine involves a three-part test, all elements of which must be met in order to invoke appellate jurisdiction."); *see, e.g., Ontiveros,* 82 Hawai'i at 451, 923 P.2d at 393 (trial court's denial of the defendant's motion to dismiss, brought on multiple punishments

grounds, was not an immediately appealable collateral order because the defendant's protection against multiple punishments could be "fully vindicated on an appeal following final judgment" (citation and internal quotation marks omitted)).

This case does not fit within the narrow guidelines of the collateral order exception. As in *Ontiveros,* Defendant's appeal does not satisfy the third prong of the collateral order exception test. Defendant's rights relating to his no contest plea can be "fully vindicated on an appeal following final judgment[,]" *id.,* because he can, under *Adams* and *Nguyen, supra,* obtain appellate review of the validity of his plea on appeal from the final order issuing out of the probation revocation proceedings.

▆▆▆▆ We also question whether Defendant's appeal satisfies the second prong of the collateral order exception test. Defendant's motion was filed in response to the motion for revocation of probation. The relief sought by Defendant·in his motion included not only withdrawal of his plea, but alternatively, enforcement of the original sentencing agreement, or resentencing to probation. Thus, rather then being "completely collateral to the merits of the case[,]" *id.* at 450, 923 P.2d at 392, or, in this instance, completely collateral to the motion for revocation of probation, the order appealed from involved issues that will likely surface during and as a result of the probation revocation proceedings and thus cannot be characterized as collateral. Indeed, looked at in another way, Defendant's no contest plea gave direct rise to his sentence of probation, and led indirectly to the motion to revoke that probation. The validity of Defendant's no contest plea is inextricably part and parcel of the probation revocation proceedings.[12]

---

11. The court denied Defendant's motion for leave to take an interlocutory appeal. "The refusal of the judge to allow an interlocutory appeal to the appellate court shall not be reviewable by any other court." HRS § 641–17 (1993).

12. Generally, the collateral order exception is applicable in criminal cases only upon a denial of pretrial motions to reduce bail, motions to dismiss based on double jeopardy grounds, and

motions to dismiss under the Speech and Debate Clause. *See Midland Asphalt Corp. v. U.S.,* 489 U.S. 794, 799, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989) ("[w]e have interpreted the collateral order exception with the utmost strictness in criminal cases. Although we have had numerous opportunities ... to consider the appealability of prejudgment orders in criminal cases, we have found denials of only three types of motions to be immediately appealable: motions to reduce bail,

Furthermore, Defendant cites no authority to support his assertion that the collateral order exception confers appellate jurisdiction in the unique circumstances of this case. "Thus, we must construe the collateral order doctrine narrowly and be parsimonious in its application." *Abrams*, 88 Hawai'i at 324, 966 P.2d at 636 (citation and internal quotation marks omitted). We conclude that the collateral order exception does not apply in this case.

 Finally, Defendant avers we have jurisdiction based upon HRS § 602–4. HRS § 602–4 (1993) provides that "[t]he supreme court shall have the general superintendence of all courts of inferior jurisdiction to prevent and correct errors and abuses therein where no other remedy is expressly provided by law." However,

> a strong commitment to the prudential rules shaping the exercise of our jurisdiction has resulted in a sparing use of this extraordinary power.
>
> This court will employ its supervisory power only upon a showing of compelling circumstances. *State v. Estrada*, 69 Haw. [204], 738 P.2d 812 (1987) (judge's entry into jury room to personally answer juror questions); *State v. Swafford*, 68 Haw. [653], 729 P.2d 385 (1986) (confidentiality of informant); *Gannett Pacific Corp. v. Richardson*, 59 Haw. 224, 580 P.2d 49 (1978) (trial court's closure of hearing to public); *Sapienza v. Hayashi*, 57 Haw. 289, 554 P.2d 1131 (1976) (disqualification of the city prosecutor from presenting matter to grand jury). *Cf. State v. Ui*, 66 Haw. 366, 663 P.2d 630 (1983) (invocation

of supervisory power unnecessary where trial court properly interpreted statute). *Moniz*, 69 Haw. at 373, 742 P.2d at 376 (citation and internal quotation marks omitted). We do not discern such "compelling circumstances" here.

 Moreover, "it is still fundamental that the starting point for interpreting a statute is the language of the statute itself." *Id.* at 374, 742 P.2d at 376. By the plain language of HRS § 602–4, invocation of the supreme court's supervisory power is only appropriate "where no other remedy is expressly provided by law." The Defendant was not and is not without "remedy ... expressly provided by law." HRS § 641–11 and HRAP Rule 4(b) provided Defendant the opportunity to appeal from the November 10, 1997 final judgment. As previously discussed, Defendant may also appeal from the order that disposes of the pending motion for revocation of probation. Finally, HRPP Rule 40 (2001) may provide Defendant an opportunity to contest the validity of his no contest plea by post-conviction petition. Accordingly, the exercise of the supervisory power is not appropriate in this case.

### III. Conclusion.

The appeal is dismissed for lack of appellate jurisdiction.[13]

---

motions to dismiss on double jeopardy grounds, and motions to dismiss under the Speech or Debate Clause" (citations and internal quotation marks omitted)).

The Hawai'i Supreme Court has had occasion to apply the collateral order exception, in criminal cases, to appeals from orders denying a pretrial motion to dismiss on double jeopardy grounds. *See State v. Minn*, 79 Hawai'i 461, 464, 903 P.2d 1282, 1285 (1995); *State v. Baranco*, 77 Hawai'i 351, 354–55, 884 P.2d 729, 732–33 (1994).

**13.** The federal courts take a different approach to this situation. In the seminal case, *United States v. Francischine*, 512 F.2d 827 (5th Cir. 1975), the defendant asserted the invalidity of the

underlying conviction that resulted from his guilty plea, as a defense to the threatened revocation of his probation. The fifth circuit court of appeals held that "the underlying validity of a conviction cannot be asserted as a defense in a probation revocation proceeding, that the conviction's validity may be collaterally attacked only in a separate proceeding under 28 U.S.C.A. § 2255 [the federal statute roughly equivalent to HRPP Rule 40], and the a [sic] district court has jurisdiction to consider a petition for revocation of probation as if the underlying conviction were unquestioned, until such time as the conviction has been judicially set aside." Hence, the district court's revocation of the defendant's probation was affirmed. *Id.* at 828. *See also United States v. Simmons*, 812 F.2d 561, 563 (9th Cir.

1987) (in a case in which the defendant claimed that his guilty plea that led to his probation was coerced because he was denied medical care and treatment while in custody, held, citing, *inter alia, Francischine, supra,* that "an appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction. The conviction may be collaterally attacked only in a separate proceeding under 28 U.S.C. § 2255, and a court should consider the petition for probation revocation as if the underlying conviction was unquestioned" (citations omitted)); *United States v. Torrez–Flores,* 624 F.2d 776, 780 (7th Cir.1980) (defendant claimed that the district court violated the federal counterpart of HRPP Rule 11 when it accepted his guilty plea; held, citing *Francischine, supra,* that "an appeal from a probation revocation is not the proper avenue for a collateral attack on the underlying conviction"); *Yates v. United States,* 308 F.2d 737, 738 (10th Cir.1962) ("by this appeal from the order revoking probation, appellant cannot, for the first time, attack the legality of such original proceeding [that resulted in his conviction]").

The *Francischine* doctrine developed because the federal courts "think it unwise to mix the two entirely different proceedings[,]" namely, the probation revocation hearing and the 28 U.S.C. § 2255 proceeding. *Francischine,* 512 F.2d at 828–29. While a probation revocation proceeding is an informal one, unfettered by the federal rules of evidence, the § 2255 proceeding is "a formal procedure with all of the usual accouterments of a civil trial." *Id.* at 829.

Under the approach taken by the federal courts, we would in this case affirm the circuit court's denial of Defendant's motion to withdraw his no contest plea, rather than dismiss his appeal for lack of appellate jurisdiction. We are confident, however, that the circuit court can and will apply the proper procedures to the proper proceeding below in a manner that will do justice without becoming unwieldy. It remains an open question, in any event, whether Defendant can bring a collateral attack on the validity of his no contest plea under HRPP Rule 40 (2001) (in pertinent part, "Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been *previously ruled upon* " (emphasis supplied)).