188 P.3d 773

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Mariann Uilani VIERRA,
Defendant–Appellant.**

**No. 27508.**

Intermediate Court of Appeals of Hawai'i.

June 25, 2008.

As Corrected July 18, 2008.

260

Henry P. Ting, Deputy Public Defender, on the briefs, for Defendant-Appellant.

Sonja P. McCullen, Deputy Prosecuting Attorney, City and County of Honolulu, on the briefs, for Plaintiff-Appellee.

NAKAMURA and LEONARD, JJ.; and FOLEY, Presiding Judge, Dissenting.

Opinion of the Court by NAKAMURA, J.

Defendant-Appellant Mariann U. Vierra (Vierra) was sentenced as a persistent repeat offender of the offense of driving without a license (DWOL). Under HRS § 286-136(b) (Supp.1996), "[a]ny person who is convicted" of DWOL is subject to an enhanced penalty "if the person has two or more prior convictions for the same offense in the preceding five[-]year period." This appeal turns on how to measure "the preceding five[-]year period" referred to in the statute. The pivotal question is: Should the statute be interpreted as measuring the preceding five-year period from the date the defendant *committed* the current DWOL offense or the date the defendant *is sentenced* on the current DWOL offense? We interpret the statute as measuring the five-year period based on the date the defendant committed the current DWOL offense. We therefore reject Vierra's argument that she did not have two or more prior DWOL convictions, and we affirm her sentences.

BACKGROUND

Vierra was cited for DWOL on four occasions: June 26, 2002, May 22, 2003, July 2, 2004, and December 8, 2004. During a trial on stipulated facts, Vierra agreed that she had driven without a valid license on the four dates that the citations were issued. She also stipulated that when the citations were issued, she already had five prior convictions for DWOL—one conviction on July 31, 2001, three convictions on April 3, 2000, and one conviction on August 10, 1998.

The only dispute between the parties was whether Vierra's prior convictions were countable under HRS § 286-136(b) as falling within "the preceding five[-]year period." The stipulated facts trial took place on August 24, 2005. By that time, except for Vierra's prior July 31, 2001, conviction, more than

five years had passed since Vierra's other DWOL convictions. In the two-week period prior to trial, both parties submitted legal memoranda on how to measure the five-year time period set forth in HRS § 286–136(b). Vierra argued that the statute should be interpreted as counting only prior convictions that occurred within the five years preceding the date the defendant is sentenced on the current offense. Under this interpretation, only one of Vierra's prior convictions would be counted, and she would not be subject to the enhanced penalty under HRS § 286–136(b) for persistent repeat offenders. Plaintiff–Appellee State of Hawai'i (the State) argued that prior convictions should be counted if they occurred within the five years preceding the date the defendant committed the current offense. Under this view, Vierra had at least four DWOL convictions that were countable for each of her four DWOL citations.

The maximum penalty to which Vierra was exposed depended on whether she had two or more countable prior convictions. If Vierra committed the offense of DWOL with less than two countable prior convictions, her offense was a petty misdemeanor and she was subject to a maximum 30 days of imprisonment and a $1,000 fine. HRS §§ 286–136(a) (2007), 701–107(4) (1993), and 706–663 (1993). If Vierra committed the offense of DWOL with two or more countable prior convictions, her offense was a full misdemeanor and she was subject to a maximum of one year of imprisonment and a $1,000 fine.[1] HRS §§ 286–136(b), 701–107(3) (1993), and 706–663. In addition, Vierra could be sentenced to a maximum term of probation of six months for a petty misdemeanor and one year for a full misdemeanor. HRS § 706–623 (Supp.2002).

Prior to trial on the four DWOL citations, the District Court of the First Circuit (district court)[2] advised Vierra that it agreed with the State's position that she had two or more countable prior DWOL convictions. The court therefore advised Vierra that she

had a right to a jury trial on each of the DWOL citations. Vierra waived her right to a jury trial. After her counsel recited the stipulated facts, Vierra confirmed to the district court that she agreed with having her case decided on stipulated facts.

Based on the stipulated facts, the district court found Vierra guilty of DWOL on the four occasions that the citations were issued. In sentencing Vierra, the district court agreed with the State that Vierra had four prior DWOL convictions within the five-year period preceding the DWOL offenses she committed on July 2, 2004, and December 8, 2004, and that she had five prior DWOL convictions within the five-year period preceding the DWOL offenses she committed on June 26, 2002, and May 22, 2003. For each of Vierra's current DWOL offenses, the court sentenced her to a one-year term of probation and a suspended ten-day jail term, to be served concurrently, a $500 fine, and a $55 Criminal Injuries Compensation fee. On August 24, 2005, the district court entered four separate Judgments for these offenses.

## DISCUSSION

I. Principles of Statutory Construction

We apply the following principles in construing a statute:

The interpretation of a statute is a question of law reviewable de novo.

Furthermore, our statutory construction is guided by established rules:

When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.

When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.

---

1. HRS § 286–136(b) was amended in 2003 to provide for the imposition of a minimum fine of $500. 2003 Haw. Sess. L. Act 69, § 5 at 122. The 2003 amendment took effect on May 20, 2003, *id.*, which was after Vierra's June 26, 2002,

DWOL citation, but before the three other citations.

2. The Honorable Clarence Pacarro presided.

In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it[,] to discover its true meaning. Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another.

*Barnett v. State*, 91 Hawai'i 20, 31, 979 P.2d 1046, 1057 (1999) (internal quotation marks, citations, brackets, and ellipses omitted; block quote format changed).

 A further principle of statutory construction is that "a rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." *State v. Lobendahn*, 71 Haw. 111, 112, 784 P.2d 872, 873 (1989) (quotation marks and brackets omitted). "[T]he legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." *Keliipuleole v. Wilson*, 85 Hawai'i 217, 222, 941 P.2d 300, 305 (1997) (some brackets in original omitted).

II. Interpretation of HRS § 286–136(b)

A. The Language of HRS § 286–136(b)

 During the time relevant to this case, HRS § 286–102(a) (1993) defined the offense of DWOL in relevant part as follows: "No person ... shall operate any category of motor vehicles listed in this section without first being appropriately examined *and duly licensed* as a qualified driver of that category of motor vehicles." (Emphasis added.) [3] In 2002, the penalty provision for the DWOL offense, HRS § 286–136 (Supp.1996), provided in relevant part as follows:

§ 286–136 **Penalty.**

(a) Except as provided in subsection (b), any person who ·violates section 286–102 ... shall be fined not more than $1,000 or imprisoned not more than thirty days, or both. Any person who violates any other section in this part shall be fined not more than $1,000.

(b) *Any person who is convicted of violating section 286–102 ... shall be subject to a maximum fine of $1,000, or imprisoned not more than one year, or both, if the person has two or more prior convictions for the same offense in the preceding five[-]year period.*

(Emphases added.) [4]

The sole issue raised in this appeal is whether HRS § 286–136(b) should be interpreted as measuring "the preceding five[-]year period" from the date the defendant *committed* the current DWOL offense (the "offense-commission date") or the date the defendant *is sentenced* on the current DWOL offense (the "offense-sentencing date"). We conclude that as to this question, the words of HRS § 286–136(b) are ambiguous and thus we cannot determine the Legislature's intent solely from the statutory language.

We reject Vierra's contention that because the introductory clause of HRS § 286–136(b) refers to "[a]ny person who is convicted of violating section 286–102," the plain language of the statute requires that the five-year

---

3. HRS § 286–102(a) was amended in 2005 in ways not pertinent to this appeal. *See* 2005 Haw. Sess. L. Act 72, § 2, at 155.

4. HRS § 286–136 (Supp.1996) also imposed the same penalties for violations of HRS §§ 286–122 (Suspension of a license; surrender), 286–130 (No operation under foreign license during revocation or suspension in this State), 286–131 (Unlawful use of license), 286–132 (Driving while license suspended or revoked), 286–133 (Unlaw-

ful to permit unauthorized person to drive), and 286–134 (Employing unlicensed driver). In 2003, HRS § 286–136(b) was amended to add a minimum fine of $500. *See supra*, n. 1. The 2003 amendments also added a subsection (c) to HRS § 286–136 which sets forth penalties applicable to a minor under the jurisdiction of the family court. 2003 Haw. Sess. L. Act 69, § 5 at 122. The language of HRS § 286–136(b) that is at issue in this appeal has not changed.

period be measured from the offense-sentencing date. We read the introductory clause as simply meaning that persons convicted of DWOL shall be subject to an enhanced penalty if they meet the statutory criteria. HRS § 286–136(b) then defines the criteria for the enhanced penalty as two or more prior DWOL convictions "in the preceding five[-]year period." The statutory language does not plainly or specifically answer the question of whether the preceding five-year period is measured based on the offense-commission date or the offense-sentencing date.

B. The Legislative History of HRS § 286–136(b)

Both the State and Vierra contend that committee reports accompanying the bill that became HRS § 286–136(b) support their interpretation of the statute. We conclude that the legislative history of HRS § 286–136(b) favors the State's position that the statute should be interpreted as measuring the preceding five-year period based on the offense-commission date.

1.

In 1996, House Bill No. 2868 (H.B. No. 2868) was introduced in the Hawai'i Legislature and eventually was enacted into law as Act 169. 1996 Haw. Sess. L. Act 169, at 283–85. Among other things, Act 169 amended HRS § 286–136 and added HRS § 286–136(b). *Id.* at § 3, at 384. Prior to 1996, all convictions for DWOL (and the other driver's license-related offenses covered by HRS § 286–136) were full misdemeanors under HRS § 286–136, even for a first-time offender. The primary purpose of the 1996 amendments to HRS § 286–136 was to re-

duce the number of cases qualifying for a jury trial—and thereby alleviate pressure on court dockets and resources—by reducing the penalty for the less persistent offenders.[5] The 1996 amendments reduced the maximum prison time from one year to thirty days for offenders with less than two prior convictions within a five-year period, and the amendments retained the higher one-year maximum jail term for offenders with two or more prior convictions within the five-year period. The 1996 amendments divided HRS § 286–136 into the lower penalty provision (HRS § 286–136(a)) and the higher penalty provision (HRS § 286–136(b)).

A change made to the language of H.B. No. 2868 and the explanation for that change support our conclusion that the Legislature intended the five-year period in HRS § 286–136(b) to be measured based on the offense-commission date.

As originally introduced, H.B. No. 2868 proposed that HRS § 286–136(b) would read as follows:

(b) Any person who is convicted of violating section 286–102 . . . shall be subject to a maximum fine of $1,000, or imprisoned not more than one year, or both, *if the person is convicted of the same offense more than two times in any five-year period.*

H.B. No. 2868, 18th Leg., Reg. Sess. (Haw. 1996) (emphasis added). This proposed version of HRS § 286–136(b) would tend to support Vierra's argument for the offense-sentencing date on the theory that a person is generally considered to be convicted when he or she is sentenced.

The House, however, amended the original H.B. No. 2868 by changing the language of

---

5. Reports regarding H.B. No. 2868 prepared by the House and Senate Judiciary Committees referred to the Legislature's goal of conserving judicial resources by reducing the number of cases subject to jury trial. The House Judiciary Committee Report stated:

Your Committee finds that if this bill had been in place in fiscal year 1994–1995, approximately fifty percent of the cases in which a jury was demanded would have remained in the district courts. Passing this bill will result in substantial cost savings and will alleviate pressure on the Circuit Court dockets.

Hse. Stand Com. Rep. No. 222–96, in 1996 House Journal at 1123.

The Senate Judiciary Committee Report stated:

Reducing the maximum prison terms to thirty days for first and second time offenses will eliminate jury demands for these offenses. Your Committee believes that eliminating jury trials in these cases is appropriate for what are basically traffic offenses, and further believes that judicial resources will be conserved.

Sen. Stand. Com. Rep. No. 2594, in 1996 Senate Journal at 1210.

HRS § 286–136(b) emphasized above so that HRS § 286–136(b) instead read as follows:

(b) Any person who is convicted of violating section 286–102 ... shall be subject to a maximum fine of $1,000, or imprisoned no more than one year, or both, *if the person has two or more prior convictions for the same offense in the preceding five year period.*

H.B. No. 2868, House Draft 1, 18th Leg., Reg. Sess. (Haw.1996) (emphasis added). In explaining this change in language, the House Judiciary Committee Report stated:

Your Committee amended Section 3 of the bill [(the section containing HRS § 286–136(b))] *to make it clearer that a higher term of imprisonment will only apply in those cases where a person has had two or more convictions for the same offense within a five-year period preceding the current offense.* The imposition of a higher penalty for a third conviction for the same offense is similar to the penalty for violating section 291–4, Hawaii Revised Statutes, pertaining to the offense of driving under the influence of intoxicating liquor.

Hse. Stand. Comm. Rep. No. 222–96, in 1996 House Journal at 1123 (emphasis added). The House passed H.B. No. 2868, House Draft 1 (H.D. 1), which incorporated the change in language to HRS § 286–136(b) that was discussed in the House Judiciary Committee Report. No additional changes were made to the language of HRS § 286–136(b) in the version of H.B. 2868 that was eventually enacted. *See* 1996 Haw. Sess. L. Act 169, § 3 at 384.

We find two aspects of the House Judiciary Committee Report to be particularly illuminating. First, the report specifically discussed the language of HRS § 286–136(b) that is critical to our analysis—language that was substituted for the words contained in the original bill. The report explained that the purpose of this amendment to the original bill was to "make it clearer" that the enhanced penalties will only apply where "a person has had two or more convictions for

the same offense within a five-year period *preceding the current offense.*" Hse. Stand. Comm. Rep. No. 222–96, in 1996 House Journal at 1123 (emphasis added). The report's reference to the "five-year period preceding the current offense" provides direct and persuasive evidence that the Legislature intended to measure the five-year period based on the offense-commission date.

Second, the House Judiciary Committee Report's reference to HRS § 291–4 as imposing a "similar" penalty provides corroboration of the Legislature's intent to use the offense-commission date. In 1996, when the report was prepared, HRS § 291–4 (Supp. 1995) [6] provided that a person who committed the offense of driving under the influence of intoxicating liquor would be subject to enhanced penalties "[f]or an offense which occurs within five years" of one or two prior convictions. HRS §§ 291–4(b)(2) and (b)(3). HRS § 291–4 thus used the offense-commission date in determining whether a prior conviction would be counted for purposes of that statute's enhanced penalties. The House Judiciary Committee Report's reference to HRS § 291–4 as imposing a similar penalty indicates that the Legislature intended the offense-commission date would likewise be used in applying the enhanced penalties under HRS § 286–136(b).

2.

Vierra, however, contends that language in the Conference Committee Report on H.B. No. 2868 supports her argument that HRS § 286–136(b) should be construed as using the offense-sentencing date. Vierra cites the following language from the Conference Committee report:

The purpose of this bill is to:

(1) Reduce the maximum prison term from one year to thirty days for first and second convictions for the motor vehicle licensing provisions covered by the penalty section in section 286–136, Hawaii Revised Statutes (HRS), while retaining a maximum term of imprison-

6. In 2000, HRS § 291–4 was repealed, effective as of January 1, 2002, and its provisions were substantially incorporated into a new statute, which was codified as HRS § 291E–61. *See* 2000 Haw. Sess. L. Act 189, §§ 23, 30 and 40, at 425–27, 432–33.

ment of one year *for a third conviction within a five-year period*[.]

Hse. Conf. Comm. Rep. No. 28, in House Journal at 969, Sen. Conf. Comm. Rep. No. 28, in 1996 Senate Journal at 751. Vierra argues that the reference to the "third conviction" within the five-year period shows that the Legislature intended the five-year period to be calculated from the date of conviction for the current offense—in other words, the offense-sentencing date. Vierra asserts that the Conference Committee Report, adopted by both the House and Senate, is more indicative of the Legislature's intent than the House Judiciary Committee Report.

 We acknowledge that, everything else being equal, a conference committee report would usually be viewed as providing a better indication of the Legislature's intent than a committee report of the House or Senate. For reasons particular to this case, however, we conclude that the House Judiciary Committee Report is more probative than the Conference Committee Report in revealing the Legislature's intent on the question raised in this appeal.

The portion of the Conference Committee Report cited by Vierra was a general summary of the changes made by H.B. No. 2868 to HRS § 286–136. In contrast, the House Judiciary Committee Report specifically addressed an amendment made to the original H.B. No. 2868 regarding the criteria for imposing the enhanced penalties under HRS § 286–136(b). This amendment *removed* language favorable to Vierra's interpretation— language which suggested that the offense-sentencing date would be used to determine the five-year period for countable prior convictions. The House Committee Report explained that the original bill was amended "to make it clearer" that the enhanced penalties will only be applicable when the defendant had at least two prior convictions within five years based on the offense-commission date. The report also referred to the provisions of

a similar repeat-offender statute that used the offense-commission date. After the House Judiciary Committee Report was issued, no changes were made to H.B. No. 2868 that affected the language of HRS § 286–136(b). Thus, the version of H.B. No. 2868 passed by the Legislature contained the same language for HRS § 286–136(b) that was considered in the House Judiciary Committee Report.[7] There is no indication that the Conference Committee Report sought to address the question of how to measure the time period for countable prior convictions, much less override the House Judiciary Committee Report's discussion of that issue.

Under these circumstances, we conclude that the House Judiciary Committee Report provides a better, more reliable indication of the Legislature's intent regarding how to measure the time period for countable convictions. The specificity with which the House Judiciary Committee Report addressed the language of HRS § 286–136(b) that is critical to this appeal trumps the summary description of the statute contained in the Conference Committee Report.

C. Interpreting HRS § 286–136(b) as Using the Offense–Commission Date Would Lead to More Rational and Sensible Results

 The Legislature is presumed not to intend unreasonable, illogical, or impractical results. *See Keliipuleole*, 85 Hawai'i at 221–22, 941 P.2d at 304–5; HRS § 1–15(3) (1993) ("Every construction which leads to an absurdity shall be rejected."). Thus, "a rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable." *Lobendahn*, 71 Haw. at 112, 784 P.2d at 873 (quotation marks and brackets omitted). Here, the interpretation of HRS § 286–136(b) as measuring the five-year period for countable prior convictions based on the offense-commission date is rational, sensible, and practical. In

---

7. The House Judiciary Committee Report discussed the provisions contained in H.B. No. 2868, H.D. 1. After H.B. No. 2868, H.D. 1, was passed by the House, it was sent to the Senate. Additional amendments were made to the bill in the form of a Senate Draft 1 and a Conference Draft 1. However, the additional amendments

to the bill did not involve any changes to HRS § 286–136(b). *See* Sen. Stand Comm. Rep. No. 2594, in 1996 Senate Journal at 1210; Hse. Conf. Comm. Rep. No. 28, in House Journal at 969; Sen. Conf. Comm. Rep. No. 28, in 1996 Senate Journal at 751.

contrast, an interpretation of HRS § 286–136(b) as measuring the five-year period based on the offense-sentencing date could lead to unreasonable and impractical results.

The obvious purpose of HRS § 286–136(b) is to provide an enhanced penalty for persistent repeat offenders. The rationale behind HRS § 286–136(b) is that a defendant with prior convictions who chooses to repeat the same crime is more culpable and deserving of greater punishment. A defendant with prior convictions makes the blameworthy choice on the date she commits the repeated crime, not on the date she is sentenced. A defendant who commits another DWOL offense within five years of two or more prior DWOL convictions does not become less culpable because her sentencing is delayed. Thus, measuring the five-year period for the enhanced penalty based on the offense-commission date is rational and sensible because it serves to align the statute with the defendant's culpability.

On the other hand, using the offense-sentencing date to determine the five-year period would create incentives for manipulation. In particular, measuring the five-year period based on the offense-sentencing date would create an incentive for a defendant with prior convictions to delay the proceedings. A defendant who was able to delay the proceedings long enough would be rewarded by avoiding the enhanced penalty. Vierra's case provides a good example.

The record reveals that with respect to the earliest DWOL citation issued on June 26, 2002, Vierra failed to appear for trial, prompting the issuance of a bench warrant. After the bench warrant was served, she was released and again failed to appear, resulting in the issuance of another bench warrant and further delay. Bench warrants were also issued after she failed to appear in response to the other three citations. When Vierra committed the current DWOL offenses, she had five prior DWOL convictions that were within five years of her commission of the June 26, 2002, and the May 22, 2003, offenses and four prior DWOL convictions that were within five years of her commission of the July 2, 2004, and December 8, 2004, offenses. However, as a result of the delays resulting

from her failures to appear, by the time Vierra was sentenced on these offenses, she only had one prior conviction that was within the preceding five years. Thus, if the five-year period was measured based on the offense-sentencing date, Vierra would have been considered only a second-time DWOL offender and would not have been subject to the enhanced penalty. We cannot conclude that the Legislature intended this result, which appears to us to be an unreasonable and impractical result.

### D. Other Repeat–Offender Provisions Use the Offense–Commission Date in Measuring the Time Period For Counting Prior Convictions

Finally, the application of the "in pari materia" rule of statutory construction supports for our interpretation of HRS § 286–136(b). "Laws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called upon in aid to explain what is doubtful in another." HRS § 1–16 (1993). We therefore can refer to other statutes involving the same subject matter for guidance in interpreting HRS § 286–136(b). Laws similar to HRS § 286–136(b), which provide for enhanced penalties for repeat offenders, use the offense-commission date in measuring the time period for counting prior convictions.

As noted, the House Judiciary Committee Report on H.B. No. 2868 referred to HRS § 291–4 (Supp.1995) as imposing a "similar" penalty to HRS § 286–136(b). Under HRS § 291–4(b), a person who committed the offense of driving under the influence of intoxicating liquor was subject to enhanced penalties "[f]or an offense which occurs within five years" of one or two prior convictions. HRS § 291–4 was later repealed and substantially incorporated into HRS § 291E–61, a more comprehensive statute which prohibits operating a vehicle under the influence of an intoxicant. HRS § 291E–61 contains language almost identical to HRS § 291–4 in applying the offense-commission date to measure the five-year period for countable prior convictions. HRS §§ 291E–61(b)(3) and (4) (2007) (imposing the enhanced penal-

ties "[f]or an offense that occurs within five years" of one or two prior convictions).[8]

The Legislature also chose the offense-commission date in enacting HRS § 291E–61.5 (2007), which imposes enhanced penalties on persons convicted of habitually operating a vehicle under the influence of an intoxicant. HRS § 291E–61.5(b) provides that "[a] person has the status of 'a habitual operator of a vehicle while under the influence of an intoxicant' if the person has been convicted three or more times *within ten years of the instant offense*, for offenses of operating a vehicle under the influence of an intoxicant." (Emphasis added.) The statute defines the phrase "[c]onvicted three or more times for offenses of operating a vehicle under the influence" as meaning that "*at the time of the behavior for which the person is charged under this section*, the person had three or more times within ten years of the instant offense" been convicted of driving under the influence of an intoxicant under HRS § 291E–61 or a comparable offense. HRS § 291E–61.5(b) (emphasis added).

In addition, HRS § 706–606.5 (1993 & Supp.2007), which authorizes the imposition of a mandatory minimum prison term on certain repeat felony offenders, calculates the time period for counting prior convictions based on when "the instant felony offense was committed." HRS § 706–606.5(2) (1993). The Legislature's use of the offense-commission date in repeat-offender statutes analogous to HRS § 286–136(b) is consistent with our analysis.

## CONCLUSION

We hold that under HRS § 286–136(b), it is the date the defendant committed the current offense for which he or she is being prosecuted that is used to determine whether the defendant has two or more prior convic-

tions for the same offense in the preceding five-year period. Based on the offense-commission date, Vierra was subject to sentencing under HRS § 286–136(b). Accordingly, we affirm the four August 24, 2005, Judgments entered by the district court.

Dissenting Opinion by FOLEY, J.

I respectfully dissent. HRS § 286–136(b) (2007 Repl.) provides for enhanced sentencing for multiple *convictions* within a five-year period:

> (b) Any person who is convicted of violating section 286–102, 286–122, 286–130, 286–131, 286–132, 286–133, or 286–134 shall be subject to a minimum fine of $500 [1] and a maximum fine of $1,000, or imprisoned not more than one year, or both, if the person has two or more prior convictions for the same offense in the preceding five-year period.

HRS § 286–136(b) does *not* provide for enhanced sentencing for an *offense* following two or more convictions within a five-year period.

In *State v. Mueller*, 102 Hawai'i 391, 76 P.3d 943 (2003), the Hawai'i Supreme Court stated:

> We have consistently held that this court cannot change the language of the statute. Further to the foregoing, where the terms of a statute are plain, unambiguous and explicit, we are not at liberty to look beyond that language for a different meaning. Indeed, in such cases our sole duty is to give effect to the statute's plain and obvious meaning.

*Id.* at 395, 76 P.3d at 947 (internal quotation marks and citations omitted).

However, if one looks beyond the language of HRS § 286–136(b), there is no "clearly expressed legislative intention to the con-

---

**8.** We note that the Hawai'i Supreme Court has held that under HRS § 291E–61, a defendant's prior conviction or convictions within the prescribed time period are attendant circumstances that have to be alleged in the charging instrument and proved beyond a reasonable doubt in order to impose the enhanced penalties for repeat offenders who operate a vehicle under the influence of an intoxicant. *State v. Domingues*, 106 Hawai'i 480, 487, 107 P.3d 409, 416 (2005); *State v. Kekuewa*, 114 Hawai'i 411, 420–23, 163

P.3d 1148, 1157–60 (2007). We do not address the question of whether Vierra's prior convictions should be viewed as attendant circumstances of her DWOL offenses as that question was not raised in this appeal.

**1.** Effective May 20, 2003, subsection (b) of the statute was amended to add the words: "minimum fine of $500."

trary." *State v. Lo,* 66 Haw. 653, 659, 675 P.2d 754, 758 (1983) (internal quotation marks and citation omitted). In amending HRS § 286–136 to reduce prison terms for first and second convictions, the Hawaiʻi Legislature stated it was "retaining a maximum term of imprisonment of one year for *a third conviction within a five year period.*" Conf. Comm. Rep. No. 28, in 1996 House Journal, at 969, and in 1996 Senate Journal, at 751 (emphasis added). The Legislature read HRS § 286–136(b), the law it enacted, as triggering a maximum term of imprisonment of one year for a third *conviction, not* a third *offense,* within a five-year period.